Mark agt. Hudson River Bridge Company.

# SUPREME COURT.

GEORGE MARK and others agt. THE HUDSON RIVER BRIDGE
COMPANY.

*Negligence — Contributory Negligence — How far corporation liable for the
reckless and needless acts of its servants, in removal of property of another
which is upon or against their property — Damages — Jury.*

The ferryboat of plaintiffs while on one of her regular trips across the
Hudson river encountered a quantity of floating ice and was carried
and lodged against the bridge of the defendant. Whilst the boat was
resting against the bridge the defendant, by its servants, undertook to
remove the same, and in doing so pulled the boat under the bridge,
causing a part of that structure to fall upon the boat, doing her great
injury. The boat was sunk and swept by the current to the lower part
of the city, where she remained sunken for several weeks, and was
finally raised by plaintiffs. In an action for damages, *held*, that, if
the defendant's servants undertook to remove and did remove the boat
at the request or by the permission of the plaintiffs, there could be no
recovery, because the men became for that act the servants of the plain-
tiffs. If, however, there was no such request or permission, the defend-
ant was answerable for any *wild*, *reckless* or *intended misconduct* of its
servants.

The boat being there without any fault of the defendant, resting upon and
against its property, it was the duty of the plaintiffs to remove her from
that position, using all reasonable expedition and haste, consistent with
the circumstances of the occasion.

If the plaintiffs failed in the discharge of this duty, then defendant had a
right to do it. But in so doing, it was bound to use ordinary care,
such care as an ordinary prudent man would exercise in the manage-
ment of his own property. The defendant is not to be held liable for
mere errors of judgment upon the part of its servants, but only for such
acts, or such negligence, as the ordinarily prudent man would not have
committed in regard to his own property.

Although the defendant was not insurers of the plaintiffs against all dam
age which might be caused in removing the boat, it may be made liable

Mark agt. Hudson River Bridge Company.

where the conduct of its servants was needless, reckless or useless, and which an ordinarily prudent man would not have been guilty of under the same circumstances.

Assuming that the boat was in collision and contact with the bridge by the fault of the plaintiffs, the act of the plaintiffs which put her there, or the neglect to remove her therefrom, is not to be deemed contributory negligence on their part, and therefore one which will defeat a recovery.

The act and conduct of the plaintiffs did not contribute to the injury in any way. The force which did the injury was an entirely independent one and intended to be applied. A wrong committed by the plaintiffs upon the defendant could not justify a second and independent one by the latter to the former. The injury done by the latter is the result entirely of a separate act of its own, and in the doing of which the plaintiffs were in no wise contributors.

Where, therefore, though all the consequences may not have been intended if what was done, was *wild* and *reckless*, and *intended*, and such as no ordinarily prudent man would have committed, the defendant must be accountable therefor, because the acts are entirely its own, and to them the plaintiffs do not contribute.

*Held*, further, that though the conduct of the defendant was negligent and reckless, still what it did was done to remove the property of the plaintiffs, which was injuring that of defendant, and which the plaintiffs should have taken away, and not to convert it to its own use. The removal of the boat having been accomplished, it was the duty of the plaintiffs to have taken possession of the boat as she was; and they had no right to abandon her. The plaintiffs could only recover for the injury and damage done to the boat by her removal and the fall of the bridge upon her. For all injuries which occurred after the plaintiffs could have relieved her there can be no recovery.

It is no error after a jury has come into court and delivered their verdict (the form of which showed they intended to add interest thereto) for the court to send them back to their room to calculate the interest.

*Special Term, March*, 1878.

MOTION by defendant at special term for a new trial upon a case with exceptions.

*Matthew Hale*, for the defendant.

*Isaac Lawson*, for the plaintiff.

WESTBROOK, *J.* — This cause was tried at the Albany circuit in January, 1878, before Mr. justice WESTBROOK and a jury.    The plaintiffs had a verdict for $15,068.16.    The cause was one of unusual importance and interest, the trial having been commenced on the 30th day of January, 1878, and its conclusion was reached on the fourteenth of February following.    The character and issues of the action were as follows:

The plaintiffs were and are the proprietors of a ferry across the Hudson river between Troy and West Troy.    On the 8th day of April, 1872, one of their steam ferry boats, the George Mark left her slip on the Troy side at a quarter to 10 o'clock P. M. to cross the river.    It was claimed by the plaintiffs that the ice had broken up, and gone down the river some few days before.    That during the day in question, the river had been comparatively free from ice, and when the Mark started, at the time just mentioned, there was nothing to indicate any danger.    When, however, the boat had got two-thirds of the way over the river, she suddenly and unexpectedly encountered a large flow of very heavy block ice, which was carried with great rapidity by a freshet down the river, and though the boat was staunch and seaworthy, was provided with all proper and necessary men and machinery, and was well and skillfully managed in every respect, she was nevertheless irresistibly propelled by the force of the moving mass of ice, down the stream and against the north bridge of the defendant which crosses the river at Albany.    The plaintiffs further claimed, that whilst the boat was resting against the bridge, the defendant by its servants, took possession of the boat and wrongfully, negligently and carelessly pulled it through and under the bridge, causing a part of the structure of the latter to fall upon the boat and then left and abandoned her to sink from the load upon her, to the great damage and injury of the plaintiffs.

The defendant, on the other hand, insisted that the boat was carried against its bridge by the carelessness and mismanagement of the plaintiffs.    That the ice was, or could have

been, seen in time to avoid it, that the boat was not equipped
properly with either men or machinery, and, that solely in
consequence of the fault of the plaintiffs, the collision of the
boat with the bridge occurred. That the former struck the
latter about 12 o'clock at night, or a little after, and from
that time until after daylight, the plaintiffs did nothing to
remove the boat, although the use of the bridge was thereby
prevented. That by the contact the upper and under north
cords of the bridge were broken, and also the south cords
pulled apart. Under these circumstances, and at the request
of the plaintiffs, the defendant's servants undertook to relieve
the boat and bridge. That as the former was caught by the
top of her gallows frame, and crowded against the latter by a
large quantity of ice, it was deemed wise by the aid of jack-
screws to press her down and under the bridge, using tugs on
both sides of her to break up the ice. That whilst the
defendant's men with all possible care and skill endeavored
thus to relieve the boat, she suddenly passed under the north
cords of the bridge, and lodged against the south ones. That
as the cords were all broken, or strained apart, it became
unsafe to jack the boat down under such south ones, and
therefore three boats (two propeller tugs and ferry boat
Olcott) were fastened to her, and she was pulled out. A part
of the bridge fell upon her, which the defendant's men imme-
diately removed, and then tied the ferry boat to the dock,
when she was taken possession of by the plaintiffs. The
defendant further claimed to recoup the damages which it had
sustained by the collision of the boat with the bridge, insisting
that the same was caused by the fault and negligence of the
plaintiffs.

From the foregoing statement it will be seen, that the
alleged cause of action of plaintiffs presented two questions:
First, was the defendant liable to the plaintiffs for the injury
done to the boat by pulling her under the bridge and thus
causing a part of that structure to fall upon her? Second, was
the defendant responsible for the damages caused and done to

the boat by allowing that part of the bridge which was upon her to remain, if that was the fact, thus permitting the boat to sink, and by not caring for her, suffering her to be carried down the river? These two propositions will be separately considered, so far as it may be necessary so to do, to understand and intelligently discuss the questions raised upon the motion for a new trial.

The evidence was very conflicting as to the circumstances under which the defendant's men went to work to remove the boat, and also as to every after-occurring event. The general effect of the evidence, given by the plaintiffs was, that in the early morning, without any permission from the plaintiffs and against their will, the agents and workmen of the defendant went upon the boat and took possession of her, and then, instead of piling a weight upon her so as to sink her sufficient to pass the bridge, as might readily have been done, or by means of tugs breaking up the ice above her and pulling her up stream, as might also have been performed, they attached to her three boats and recklessly and needlessly pulled her under the bridge, thereby causing a part of the span thereof to fall upon the boat doing her great injury. The general drift of the defendant's evidence was to the effect that after the boat had rested against the bridge for several hours, and the plaintiffs had done nothing to relieve her, that its workmen undertook the removal at the request of the plaintiffs, which, though done with all skill and care, the events occurred as have been hereinbefore stated. The court charged the jury that if the defendant's servants undertook to remove and did remove the boat at the request or by the permission of the plaintiffs, there could be no recovery because the men became, for that act, the servants of the plaintiffs. If, however, there was no such request or permission by the plaintiffs, the law, to govern the action of the jury, was thus charged: " The boat of the plaintiff's being against the bridge of the defendant, it was the duty of the plaintiff, without unnecessary delay, to remove her. The boat was there without any fault

of the defendant, and it may or may not have been there, without any fault of the plaintiffs. But, at all events, she was there resting upon and against defendant's property, and it was the duty of the plaintiffs to remove her from that position, as soon as they could, using all reasonable expedition and haste, consistent with the circumstances of the occasion. If the plaintiffs failed in the discharge of this duty, then defendant had a right to do it. In so removing the boat the defendant was bound to use ordinary care, such care as an ordinarily prudent man would exercise in the management of his own property. The defendant is not to be liable for mere errors of judgment, upon the part of its servants, but only for such acts, or such negligence, as the ordinarily prudent man would not have committed in regard to his own property. The defendant was not an insurer of the plaintiffs against all damage which might be caused in removing the boat. It was, however, required to use just so much care as the ordinarily prudent person would use, under such circumstances, in dealing with his own property. It had no right to recklessly destroy the boat, but was bound to deal with it, as the ordinarily prudent man would do, when desiring to save his own property. It may have made mistakes, but, for mere errors in judgment, the defendant is not responsible. It must be such conduct, if defendant is to be made liable, as you can say was needless, reckless or useless, and which an ordinarily prudent man would not have been guilty of under the same circumstances." The counsel for the defendant also asked the court to charge, " That the plaintiff cannot recover in this action if their boat came in contact with the bridge through their negligence in the equipment, manning or management of their boat." The court refused so to charge, and said: "I put it upon the same ground whether the boat got there by their fault or not." To the charges as made, and to the refusal to charge, and also to the remarks of the court in refusing to charge as requested, there were separate exceptions on the part of the defendant, and

this presents the first ground upon which the motion for a new trial is based.

The question argued, and which the exception presents, is this: Assuming that the boat was in collision and contact with the bridge by the fault of the plaintiffs, is the act of the plaintiffs, which put her there, or the neglect to remove her therefrom, to be deemed contributory negligence on their part, and, therefore, one which will defeat a recovery? Reflection has satisfied me that this question must be answered in the negative. The act and conduct of the plaintiffs did not contribute to the injury in any way. The force which did the injury was an entirely independent one, and intended to be applied. It may be true that I am careless in permitting my horse to be at large, and that if it wanders upon my neighbor's premises he may recover for the trespass. If, however, my neighbor shoots him, and recklessly and willfully drives him to, and through a place, where he must be, and is, injured, it is not seen how my original careless act, in permitting him to be at large, or suffering him to commit a trespass, can be said to be contributory to that by which the animal was wounded or killed. The most that can be said is, I have permitted and allowed the horse to go and remain in a position and place, where the improper and wrongful subsequent act could be, and was done, but my act does not contribute to his. It is clear that my neighbor has a right to remove it from his premises, but it is also equally clear, as it seems to me, that he cannot do it in such a wild and reckless manner as an ordinarily prudent man would not have exhibited towards his own property. He is not to be liable for mistakes or errors of judgment, but he must not do any act which the ordinary mind would say was improper, imprudent and reckless. This was charged, and if we are told that this was indefinite, because it left so much to the judgment of the jury, it is answered that we do not see how it could have been more explicit without trenching upon their prerogative. In *Hicks* agt. *Dorn* (42 *N. Y.*, 47), which was an action for destroying a boat grounded

Mark agt. Hudson River Bridge Company.

in the Erie canal, on page 52, EARL, Ch. J., said : "If the referee had found that this boat was a nuisance, the defendant would not necessarily have been justified in destroying it. In removing or abating nuisances, no unnecessary damage or injury to property can be justified." Precisely this line of thought influenced the charge. It was not then seen, nor is it now seen, how a wrong committed by the plaintiffs upon the defendant, could justify a second and independent one by the latter to the former. The injury done by the latter is the result entirely of a separate act of its own, and in the doing of which the plaintiffs were in no wise contributors. In *Norris* agt. *Litchfield* (25 *New Hampshire*, 271), it was held : "The fact that a plaintiff is a trespasser, or violater of the law, does not of itself discharge another from the observance of due and proper care towards him, neither will it necessarily preclude him from a recovery against a party guilty of negligence." A similar principle was also held in *Lovett* agt. *Salem and South Danvers Railroad Company* (9 *Allen*, 557), a Massachusetts case, and we regard it as sound. There is a line of cases which holds that a party who has negligently put himself or property in a dangerous position, cannot recover against another who carelessly, and not intentionally, comes in collision with him or it ; and also another in which, though I am negligent in leaving something dangerous to others in an exposed place, yet a party negligently coming in contact therewith has no remedy. These are plainly cases of concurring negligence. No element of design or intent enters into either. But the doctrine which controls the cases referred to, cannot be applicable to one like this in which the act done was willful or intended — willful or intended as a simple act, without intending all the consequences. Every force and means employed to remove the boat were the results of design and not of accident. If, therefore, though all the consequences may not have been intended, what was done was wild and reckless, and intended, and such as no ordinarily prudent man would have committed, the defendant must be accountable

therefor, because the acts are certainly its own and to them the plaintiffs do not contribute. To hold otherwise is to decide that when one finds another's property upon his premises, he can do with it whatever he pleases, a doctrine unwarranted in any sound code of morals or of law.

The defendant also asked the court to charge the jury, "that plaintiffs' boat having drifted upon, and become entangled with, a span of the bridge without any fault of defendant, defendant was not bound to the exercise of any greater skill in removing the boat and relieving the bridge than defendant's agents and employes possessed." To this the court said: "The defendant was bound to have ordinarily prudent men to do the work. While it may be true, as a general proposition, that the defendant is not responsible for mistakes in judgment on the part of its men, or the exercise of more knowledge than they have, yet it ought to have men who had knowledge sufficient to act in an ordinarily prudent manner."

The defendant's counsel excepted to the modification of this request.

It further asked the court to charge, "That the evidence being undisputed that the acts of the defendant by its servants and agents, in removing the boat, were performed in good faith, and that the method adopted by them for that object was in their opinion and belief, and to the extent of their skill, a proper one, the defendant is not liable to the plaintiff for the consequences, even though a better method might have been used." The court said: "I have charged that in part and not in part, I think it is partly true and partly not true. I think I will not charge further upon that point than I have charged. I think the company is not responsible for errors or mistakes in judgment of its employes. I think, however, the company was bound to have men in its employ of ordinary knowledge and ordinary capacity for such an emergency, and if they acted as men would not have acted

possessing ordinary prudence and knowledge, or for mere willfulness, defendant is responsible."

Defendant's counsel excepted to such refusal and to the modification of this request.

The question which these requests and refusals to charge involve is somewhat difficult. It certainly was not the intention of the charge to instruct the jury that the defendant was bound to have skillful men and all needed appliances requisite to remove in a proper manner from its bridge any vessel improperly placed against it, and it does not go that length. The jury had been charged that the defendant was not responsible for errors or mistakes in judgment of its men, and that it was only liable for ordinary care. The request to charge goes farther, and would have exonerated the defendant, if made, though it had willfully kept in their employ men entirely reckless, and not having the understanding of an ordinary human being. The bridge spanned a stream which was navigable, and which is one of the great commercial arteries of the nation. Necessarily, in the use of the river, crafts must come in contact with the structure of the defendant; sometimes with and by the fault of the owners, and sometimes in spite of all due care and caution. To the owners of vessels coming thus in contact with the bridge, and with the navigation of which the defendant interferes, does it owe no duty? Can it employ crazy men, who will sink and destroy every floating thing which strikes the bridge? May it keep drunken men there, or savages who will do any wild or reckless act? Of course, no sort of opinion is given that any such men were in the employ of the defendant. The supposed cases are put to illustrate the reasoning which refused the request to charge. It was assumed that the defendant owed some duty to those who might even trespass upon their property. The farmer may not keep a savage dog, which will bite and tear any man or animal which may stray upon his premises, nor a drunken or crazy servant who will destroy his neighbor's property when he finds it upon

his employer's premises. He is limited to the employment of the ordinary means, and the ordinary persons to protect his interest. To this same accountability and no greater was the defendant held. It surely was not harsh, unreasonable, or improper to require it to have in its employ men of ordinary sense, and such as an ordinarily prudent person would have. It was not required to have skilled workmen, and the best appliances, but it was said that its employes should be such that the outside world might safely come in contact with them. If this is not sound, then the varied and divers pursuits of the business world could not be carried on in safety, for they can only be so conducted, when men with whom property and individuals must come in contact possess ordinary intelligence and are ordinarily careful. To this extent the charge went, and it seems to me now to be sound. In the complaint the act done was charged to have been improperly and recklessly done by the defendant. If it was so done, because its servants knew no better or because they were naturally wild and reckless, those facts simply bore upon the main allegation of the complaint, and did not present to the jury an issue unpresented by the pleadings. Neither was any question upon the sufficiency of the pleading raised but only the abstract one of the duty of the defendant in the employment of servants and agents.

The alleged errors in the submission of the first part of the plaintiff's case have now been examined and considered, as is hoped, without any pride of opinion controlling us, and we feel compelled to say that we have discovered none. This brings us to the submission of the after-occuring events to the jury.

It was claimed on the part of the plaintiffs, that after the boat had been pulled under the bridge and a part of the span of the latter had fallen upon her, the servants of the defendant then abandoned the boat and did not remove the timbers of the bridge which had fallen and rested upon her but permitted them to remain and by means thereof, and of such.

Mark agt. Hudson River Bridge Company.

abandonment, the boat was sunk and swept by the current to the lower part of the city where she remained sunken for several weeks before she could be raised, and thus the machinery and engine were rusted and injured, and great damage done to the boat generally.    The defendant, on the other hand, insisted that as soon as the bridge fell upon the boat its men removed it, took the boat to the dock, where she was fastened by a line and taken possession of by plaintiffs.    On this part of the case the evidence was also very conflicting, utterly and wholly irreconcilable, and upon it the jury were instructed : "It was the duty of plaintiffs to relieve the boat if they could. If they did not, because they would not, then the defendant is not responsible for the subsequently accruing damages, but if they did not because they could not, and defendant could, then your next inquiry will be, is it true that defendant's men left the boat with the bridge upon her thus leaving her to sink?"    The error complained of in this part of the charge is, that there was absolutely no evidence to warrant the jury in finding that the plaintiffs could not have relieved the boat, and hence the court erred in submitting that question to them.

It was not claimed upon the trial, and is now hardly claimed by the counsel for the plaintiffs, that the conduct of the defendant, in any view of the case, had been such toward the boat as to justify the plaintiffs in its abandonment.    If plaintiffs had so been advised, they would not have raised the boat at all, but left it to its fate, and sought to make the defendant liable for its whole value.    It is possible that I may do my neighbor's property an injury, but it cannot be said I thereby make myself liable for the entire article.    If my neighbor's property is, by his fault, upon my land, and he leaves it there unreasonably, and the use and enjoyment of my own premises depend upon its removal, and I take the property, not to hold but to remove it, as its owner should have done, though it is done recklessly and carelessly, yet, it would not be seriously argued that I have thus appropriated it to my own use, and am answerable for its whole value.

The supposed case is the one before us. Grant that the conduct of the defendant was negligent and reckless, still, what it did was done to remove the property of the plaintiffs, which was injuring that of defendant, and which the plaintiffs should have taken away, and not to convert it to its own use. No railroad train could pass the bridge whilst the boat was resting against it, and the continual pressure of the ice against the boat adding to the injury done by the first contact. The removal of the boat having been accomplished, it was clearly the duty of the plaintiffs to have taken possession of the boat as she was, and they had no right to abandon her. Why, then, was not the boat relieved from the weight upon it, and taken care of by the plaintiffs? Was it because no help could be procured? There really was no pretense of that sort upon the trial. Mr. Mark, one of the plaintiffs, and their general manager, saw, as he swore, the boat gradually sinking from the weight of the bridge material upon her, and did nothing. Why? The answer he gave, himself, as taken down upon my own minutes, was: "I could have got tugs and help, but as I had not pulled the bridge on her, I did not think I had any business to take care of it." There was absolutely no evidence which could have justified the jury in finding that the plaintiffs could not have relieved the boat, and it was, therefore, clearly erroneous to submit to them any such question (*Storey* agt. *Brennan*, 15 *N. Y.*, 524). It is no answer to this difficulty to say that the boat was there sunk and that all damages had been done which were done. This, at least, was a disputed question, and the weight of the evidence and of all probabilities are against it. Upon the undisputed facts the jury should have been instructed that the plaintiffs could only recover, if at all, for the injury and damage done to the boat by her removal and the fall of the bridge upon her That for all injuries which occurred after the plaintiffs could have relieved her, there could be no recovery. From the amount of the verdict, and its form, which indicated that the jury had allowed a counter-claim to

Mark agt. Hudson River Bridge Company.

the defendant for the injury done to the bridge by the boat striking against it, it is apparent that the plaintiffs have had a full recovery for all the injuries sustained. As a part of their injuries, judging from the proof, were avoidable, and caused by plaintiffs' neglect, there must be a new trial. There was no evidence which would justify any jury in finding that the plaintiffs were powerless to save their property; on the contrary, one of such plaintiffs gave affirmative and positive testimony that the boat was abandoned because he thought he had no business to take care of her.

As the conclusion has been reached that there must be a new trial, for the reason indicated, the alleged irregularity in sending the jury back to their room to calculate the interest after their verdict had been delivered to the clerk, which the form of such verdict showed they intended to add thereto, will not be formally discussed; suffice it to say, that as the jury had, as we have said, found that they intended to allow interest, it could not have been irregular to instruct them to calculate its amount. There was no error in this respect, but for the one which we have considered, and which was the submission to the jury of an issue, upon which there was no conflicting testimony, there must be a new trial, with costs to abide event.