CORNELIUS D. HICKS, Respondent, v. ROBERT C. DORN, Appellant.

A superintendent of canal repairs, in making repairs and removing obstructions, acts ministerially, and is liable to an individual injured by the improper discharge of that duty. (LOTT and HUNT, JJ., contra.)

He has the right to destroy private property, if necessary to restore navigation; but, in so doing, takes upon himself the burden of showing great public or overruling necessity. This right does not exist where such destruction is merely the cheapest, speediest or most convenient method of restoration. (EARL, Ch. J.)

(Argued January 8th, 1870; decided March 17th, 1870.)

APPEAL from a judgment of the General Term of the Supreme Court, for the third district, affirming a judgment in favor of the plaintiff, entered upon the report of Isaac Edwards, Esq., referee.

The facts, as found by the referee, are the following: Plaintiff was the owner of a canal boat, of the value of $1,600. Defendant was the superintendent of repairs in charge of section two of the Erie canal, including that portion of said canal hereinafter mentioned.

At the northerly point of the basin, at Vischer's Ferry, was a dry dock, which was private property, into which boats were taken from the canal for repairs. This dry dock was separated from the basin by two lock gates belonging to the State, opening southerly into the canal. On the westerly side of the dry-dock were a waste-weir and gates, erected by the owner of the dry dock, for letting off surplus water; the water running through a ravine into Stony Creek, which flowed through a culvert under the canal and into the Mohawk river. This culvert was the property of the State.

The gates separating the canal from the dry dock were built and used by the State as a waste-weir, the paddle gates only being opened to let off water from the canal, which passed through the waste-weir of the dry dock, and so into the creek and through the culvert  The creek was of con-

siderable size, and just above the culvert fell twenty-three feet within 1,000 feet.

May 18th, 1865, there was a violent spring rain, which raised the water in the river, creek and canal, very much, creating a considerable freshet, so that the water was two feet higher in the canal, and in some places ran over the banks.

Two or three days previous to this, the plaintiff's boat had been taken from the canal into the dry dock for repairs. The State kept no one there in charge of the gates.

May 19th, the river, creek and canal being in the condition described, the gates were opened by some men in charge of the dry dock, and the captain and crew of the plaintiff's boat commenced moving her, stern foremost, into the canal. When the boat was nearly half-way through the gates, the waste-weir and gates of the dry dock suddenly gave way; in consequence of which the water ran rapidly out of the dry dock and out of that level of the canal. This left the boat within the gates and resting upon the miter sill, about forty-five feet of her length in the basin of the canal, and the remainder, about fifty feet, in the dry dock.

The water having run out of this level of the canal, it was not practicable to render it again navigable without damming up the culvert, or restoring the dam and waste-weir from the dry dock, or cutting up and removing the boat so as to close the gates, or building a coffer dam around the stern of the boat in the basin of the canal. The attempt to dam up the culvert would have been only an experiment; and, if successful, it would have been fraught with danger to the bank of the canal. The break in the bank of the dry dock might have been repaired in two days, so as to have permitted sufficient water to have been let into the canal and dry dock to float said boat out of the gates, thus permitting them to be closed and navigation resumed. The expense of repairing this break does not appear. A coffer dam might have been built across the jaws of the canal basin at the stern of plaintiff's boat, within two or three days, of sufficient strength, at

a cost of $900, and thus the navigation could have been resumed. But it would have cost from $250 to $350 to remove this coffer dam, if that should be found necessary.

The cutting up of plaintiff's boat, by which the gates could be at once closed and the water let into that level, was much the speediest mode of restoring navigation, and it involved the destruction of property the value of which did not much exceed the expense to the State of restoring navigation in either of the practicable ways above mentioned. In this manner the navigation could be restored in about twelve hours.

Defendant promptly examined and deliberated upon the situation; upon the several modes of restoring the navigation of the canal. He fairly, honestly, and in good faith exercised his judgment and discretion in the premises, and in good faith decided and determined that the best mode of restoring the navigation was to cut out of plaintiff's boat a piece large enough to enable him to close the gates of the dry dock. He thereupon caused this to be done, and it was done without any want of care in the act, and with no greater injury to plaintiff's property than the act necessarily involved.

There was no proof of any definite amount of loss to the State, or damage to individuals, which would have resulted from a suspension of navigation for three days, or any length of time, but the referee inferred that the loss and damage would have been considerable.

The referee found that the defendant's instructions from the canal commissioners were to act promptly, whenever a break occurred, and restore the navigation as speedily as practicable, at all hazards. That the boat grounded in the gates of the lock without any fault or negligence on the part of the plaintiff, his agents or servants; that he was not notified to remove the boat, and no time or opportunity was given him to do so.

By the method adopted, navigation was restored in about twelve hours.

The conclusions of law found by the referee upon these

facts were: That it was not defendant's duty to put the canal in navigable order in the shortest time possible, without regard to the plaintiff's right of property in the boat; that the defendant committed a trespass in entering upon and cutting up the plaintiff's boat, and that plaintiff was entitled to judgment for the damage sustained by him, which, including interest, the referee found was $1,856.14.

Judgment was entered upon this report, from which defendant appealed to the General Term, where said judgment was affirmed. Defendant appealed to this court.

*Nathaniel C. Moak*, for the appellant, cited *Adsit* v. *Brady* (4 Hill, 630); *Shepherd* v. *Lincoln* (17 Wend., 252); *Robinson* v. *Chamberlain* (34 N. Y., 397); *Griffith* v. *Tollett* (20 Barb., 620); *Underwood* v. *Green* (3 Robertson, 86, 92); *Mills* v. *Brooklyn* (32 N. Y., 489); *Board of Commissioners* v. *Vanderbilt* (2 Rob., 383); *Wilson* v. *Mayor* (1 Den., 599); *People* v. *Collins* (19 Wend., 56); *Kendall* v. *Stokes* (3 How. U. S. R., 87, 97, 98); *Matter of Church Street* (49 Barb., 455); Angell on Highways, §§ 49, 274; *Witman* v. *Tracey* (14 Wend., 255); *Renwick* v. *Morris* (7 Hill, 575-6); 2 Kent's Com., 338-9; Broom's Leg. Max., p. 1-3; *Russell* v. *Mayor* (2 Den., 461); *Schlussell* v. *Willet* (34 Barb., 615); *Ashley* v. *Marshall* (29 N. Y., 494); *Thompson* v. *Bennett* (2 Keyes, 503); *Rogers* v. *Bradshaw* (20 Johns., 735); *Wheelock* v. *Young* (4 Wend., 647, 650); *Walrath* v. *Barton* (11 Barb., 382); *Lynch* v. *Stone* (4 Den., 356).

*Isaac Lawson*, for the respondent, cited *Roch. White Lead Co.* v. *City of Rochester* (3 N. Y., 463); *Robinson* v. *Chamberlin* (34 N. Y., 389); *Barton* v. *City of Syracuse* (36 N. Y., 54, and cases cited); S. C., 37 Barb., 292; *Jenne* v. *Jolliffe* (9 Johns., 380); *Coates* v. *Stewart, Sheriff, &c.* (19 Johns., 297); *Shepard* v. *Lincoln* (17 Wend., 249); *Field* v. *Mayor of New York* (6 N. Y., 179); *Wright* v. *Delafield* (25 N. Y., 266); *N. Y. C. Ins. Co.* v. *N. P. Ins. Co.* (20 Barb., 468); *Allen* v. *Ins. Co.* (46 Barb., 656); *Hervy* v. *Kerr* (8 Bosw.,

194); *Brazill* v. *Isham* (12 N. Y., 9); *Graham* v. *Harrower* (18 How. Pr. R., 144); *Beaty* v. *Swartwout* (32 Barb., 293); *Lyon* v. *Jerome* (26 Wend., 489); *Russell* v. *Mayor of New York* (opinion of Sherman, Senator, 2 Den., 474); S. C., opinion of Porter, page 479; *Mouses' Case* (12 Coke, 63); *Ludlow* v. *Village of Yonkers* (43 Barb., 493); *Hyde* v. *Stone* (7 Wend., 354); *Bissell* v. *Hopkins* (4 Cowen, 53); *Beals* v. *Guernsey* (8 Johns., 446); *McDonald* v. *North* (47 Barb., 530); *Richmond* v. *Bronson* (5 Den., 55).

EARL, Ch. J. It was the duty of the defendant, as superintendent of canal repairs, to keep in repair the section of the canal intrusted to him, and to remove obstructions to navigation; and he claims protection, in this case, on the ground that he was in the proper discharge of this duty when he cut up the plaintiff's boat. He bases his claim to protection upon several grounds, which I will proceed to notice.

1st. He claims this case comes within the section of the Revised Statutes (1 R. S., 221, § 23, Edm's ed.) which provides that "whenever the navigation of any of the canals shall be interrupted or endangered, it shall be the duty of the commissioners, without delay, to repair the injury causing or threatening such interruption; and for that purpose they shall have power, by themselves or their agents, to enter upon and use any contiguous lands, and to procure therefrom all such materials as in their judgment may be necessary or proper to be used in making such repairs." This section confers an authority to be exercised by the canal commissioners. It is their *judgment* that is to determine the necessity or propriety of entering upon the adjoining lands for the purpose indicated. It confers no authority whatever upon superintendents. They may undoubtedly act, but it must be under the special direction and authority of the commissioner in charge, whose judgment is to determine the necessity. Here it is not claimed that the defendant had any direction whatever from the canal commissioner to take and cut up this boat. (*Lyon* v. *Jerome*, 26 Wend., 489.) But in this case,

if the canal commissioner himself had done the act complained of, instead of the superintendent, he could not have found protection under this statute, as the act does not come within its terms. It is difficult to perceive how it can well be claimed that a statute which confers authority upon canal commissioners to enter upon adjoining lands and take material to repair the canal, justifies the destruction of property which happens to be in the canal. It would not be claimed that, under this statute, the canal commissioners could take a loaded boat and appropriate her and her cargo to stop or repair a break in the banks of the canal. It is clear, therefore, that this statute furnishes no protection to the defendant.

2. It is claimed that the canal is, in law, a public highway, and that this boat was a public nuisance in such highway, interrupting navigation, which any person, and certainly a public officer, had a right to remove. It is not alleged in the answer, and it was not found by the referee, that it was a nuisance. Navigation was interrupted by the want of water, caused by the break; not so much by the boat. This boat was not in the canal in such a way as to interfere with the passage of boats. But there should have been an issue and finding upon this point. If the referee had found that this boat was a nuisance, the defendant would not necessarily have been justified in destroying it. In removing or abating nuisances, no unnecessary damage or injury to property can be justified, and the referee might have found still, as he has found, that the defendant should have adopted some other method to restore navigation than the destruction of the boat.

3. It is claimed that the defendant, in determining to remove this boat, and in the removal of it, had a judicial discretion to exercise; and hence, that he is not liable, in a civil action, for the manner in which he exercised this discretion. I am unable to see in what sense the defendant, as to this transaction, acted judicially. The law made it his duty to put this canal in repair (1 R. S., 236, § 100, Edm's ed.), and it was not left to his discretion to determine whether he

would discharge that duty or not. The law made it an imperative duty, and if he had neglected to perform it, he would have been liable civilly for damages sustained by any person from his neglect of duty. (*Adsit* v. *Brady*, 4 Hill, 630; *Shepherd* v. *Lincoln*, 17 Wend., 249; *Robinson* v. *Chamberlain*, 34 N. Y., 397; *Fulton Fire Ins. Co.* v. *Baldwin*, 37 N. Y., 648.) In the discharge of this duty, thus imperatively imposed upon him by law, he acted ministerially. It is true that he was bound to exercise his discretion as to the methods and instrumentalities to be employed, and this is true of all ministerial officers; and yet it has never been held that, merely because ministerial officers have a discretion to exercise, that gives them the immunity of judicial officers. In this case, then, the defendant was bound to discharge his ministerial duties in a prudent, careful manner, without infringing upon the rights of private individuals or unnecessarily injuring them, and for an improper discharge of his duty the law makes him liable to the individual injured. (*Rochester White Lead Co.* v. *The City of Rochester*, 3 N. Y., 463; *Robertson* v. *Chamberlain*, 34 N. Y., 389; *Barton* v. *The City of Syracuse*, 36 N. Y., 541.)

The plaintiff's boat was valuable private property. The plaintiff was in no degree in fault, and he did not in any way contribute to the break that caused the interruption of navigation. The duty of the defendant was imperative to repair the canal, and though the plaintiff's boat was private property, he had the right to destroy it, if such destruction was necessary to enable him to restore navigation. This right did not arise simply because it was more convenient to repair the canal by destroying the boat, nor because this was the cheapest or speediest way to do it. The destruction of this private property should have been a last resort, after other reasonable expedients had failed. When a public officer undertakes to destroy private property under the claim of great public or overruling necessity, he takes upon himself the burden of showing such necessity. (*Russell* v. *The Mayor, &c., of New York*, 2 Denio, 475.) All that can be claimed in this

action is, that it was more convenient and speedier to repair in the way adopted than in any other. This does not make a case of overwhelming or pressing necessity within the rule. All the facts were before the referee, and it was for him, upon the evidence, to determine whether the defendant discharged his duty as a reasonable, prudent and careful man; whether the defendant was justified in pursuing extraordinary rather than ordinary methods, and whether there was a pressing necessity for the destruction of the private property in question, and we ought not to disturb his decision upon these questions.

I therefore favor an affirmance of the judgment appealed from.

EARL, Ch. J., FOSTER, SMITH, GROVER and SUTHERLAND, JJ., for affirmance.

LOTT, J., read an opinion for reversal. HUNT, J., was also for reversal. INGALLS, J., did not sit.

Judgment affirmed.