GEORGE MARK et al., Respondents, *v.* THE HUDSON RIVER BRIDGE COMPANY AT ALBANY, Appellant.

Plaintiffs' steam ferry-boat was carried by floating ice down against defendant's bridge and became entangled therein; in the attempt by defendant to extricate the boat, a span of the bridge was pulled down upon it, causing serious injuries thereto. In an action to recover damages, *held*, that the boat, in the position it was placed, became a nuisance, which the defendant for its own protection had a right to remove, yet in exercising that right, it was its duty to use ordinary care to do no unnecessary injury.

The court declined to charge in express terms that the defendant was not liable unless there was gross negligence on its part. The charge, however, was, in substance, that in the removal of the boat, defendant was

not bound to use the highest skill, or to have skilled workmen and the best appliances, but was only bound to have ordinarily careful men and such appliances as the statute creating it required, and that to render defendant liable, the jury must find that the injury was caused by such acts of carelessness and negligence as ordinarily careful, prudent men intent on doing their own work properly would not have committed. *Held* no error; that the charge gave a sufficient definition of the degree of negligence necessary to be shown.

Also *held*, that in freeing the boat from the span of the bridge which fell upon it, plaintiffs were only required to use ordinary diligence, and that if by the use thereof they could not have done this, they could recover of the defendant the subsequently accruing damages.

In repairing the boat some improvements were made therein. The gross amount of expenditures was shown on the trial, without separating the expenses of the repairs from those of the improvements. *Held*, a refusal to charge that plaintiffs could recover only nominal damages, and could recover no damages for the loss of the use of the boat while being repaired, was not error; that while the burden of proof was upon plaintiffs on the question of damages, yet as the evidence showed substantial damages caused by defendant's negligence, the failure to distinguish as to all the items between the expenditures thereby incurred and those for which defendant was not liable, did not limit the recovery to nominal damages.

*It seems* if the request had been simply to charge that defendant was only liable for expense of repairs or loss of time, which were affirmatively shown to have been caused by defendant's negligence, a refusal so to charge would have been error.

(Argued February 5, 1886; decided October 5, 1886.)

Appeal from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made May 10, 1884, which affirmed a judgment in favor of plaintiffs, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for injuries to plaintiffs' steam ferry-boat alleged to have been caused by defendant's negligence.

The boat was running across the Hudson between Troy and West Troy. On April 8, 1872, in making a regular trip it was caught by floating ice in the river and carried down against defendant's bridge and became entangled therein. In the

attempt to remove it by forcing it through the bridge, a span of the bridge was carried away and fell upon the boat, inflicting serious injuries.

The further material facts are stated in the opinion.

*Matthew Hale* for appellant.    Negligence may consist either in the careless performance of obligation assumed, or in neglecting to undertake the performance of obligations imposed by law.    (Shearm. & Redf. on Neg., § 4.)    Where the proximate cause of damage is the plaintiff's own supineness or carelessness, he has no ground of action against the defendant, even though the primary and original cause of the damage be the defendant's wrongful act.    (Shearm. & Redf. on Neg., §§ 10, 33.)   The court erred in refusing to charge that plaintiffs could not recover if their boat came in contact with the bridge through their negligence.  (*Hicks* v. *Dorn*, 42 N. Y. 47; *Austin* v. *N. J. Steambt. Co.*, 43 id. 75 ; Shearm. & Redf. on Neg., § 33; *Chicago, etc., R. R. Co.* v. *Goss*, 17 Wis. 428.)    No allowance should have been made for the loss of the use of the boat in the absence of proof as to how much time was lost in consequence of the alleged negligence of defendant. (*Leeds* v. *Met. Gas L. Co.*, 90 N. Y. 26.)    The court erred in refusing to charge that the defendant was not liable in this action, unless there was a gross negligence on the part of its servants in the removal of the boat, and also in its charge as to the degree of care for want of which defendant was liable. (*Coggs* v. *Bernard*, 2 Ld. Raym. 909 ; *Alexander* v. *Greene*, 7 Hill, 533, 546, 560, 574; *Cleghorn* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 44 ; *First Nat. Bk.* v. *Ocean Bk.*, 60 id. 278, 295 ; *Pattison* v. *Syracuse Bk.*, 80 id. 82.)    If one does an act of pure favor for another, with the assent of the latter, his responsibility to him is reduced to the duty of merely slight care and diligence.    (Shearm. & Redf. on Neg., § 22 ; *Spooner* v. *Matoon*, 40 Vt. 300.)

*Isaac Lawson* and *R. A. Parmenter* for respondents.    The fault of the plaintiffs in allowing their boat to come against

the bridge, if they were in fault, would not justify the defendant in subsequently doing damage to the boat by its negligence, carelessness or recklessness, or that of its servants in attempting its removal. (Wood on Nuisance, §§ 730, 764, 767, 769; *Cooper* v. *Marshall*, 1 Burr, 260; *Harrower* v. *Ritson*, 36 Barb. 201; *State* v. *Kernan*, 2 Ames [R. I.], 497; *Gates* v. *Blencoe*, 2 Dana [Ky.], 158; *Dyer* v. *Depue*, 5 Whart. [Penn.] 584; *Wright* v. *Moore*, 38 Ala. 594; *Moffat* v. *Brewer*, 2 Gen. [Iowa] 348; *Perry* v. *Fitzhow*, 8 Adol. & Ellis, 775; *City of Indianapolis* v. *Miller*, 27 Ind. 398; *Graves* v. *Shattuck*, 35 N. H. 257; *Hicks* v. *Dorn*, 42 N. Y. 47, 52, 54; *Babcock* v. *City, etc.*, 56 id. 268; *Tuff* v. *Warner*, 6 C. B. [N. S.] 573; 2 id. 740; *Davis* v. *Mann*, 10 Mees. & Wels. 546; *Scott* v. *Dublin, etc., R. R. Co.*, Irish C. L. P. 394; 3 Ohio St. 172; 4 Ind. 94; 43 Mo. 380; 38 Ala. [N. S.] 76; 9 Allen, 557; 3 id. 176.) The fact that defendant, or its agents or servants, acted in good faith would furnish no justification for carelessness, negligence or recklessness. (*Hicks* v. *Dorn*, 42 N. Y. 47.) The burden of proof was clearly upon the defendant, in case the jury should find the defendant was guilty of negligence in pulling the span upon the boat, both upon the question of the plaintiffs' negligence in failing to remove the span, and upon the question as to the amount of damages caused by the failure to remove it. (*Howard* v. *Daly*, 61 N. Y. 371; *Hamilton* v. *McPherson*, 28 id. 77; *Costigan* v. *M. & H. R. R. Co.*, 2 Denio, 609; *DeBenedetti* v. *Manchin*, 1 Hilt. 213; *Thomas* v. *Kenyon*, 1 Daly, 132.) Under the circumstances the law does not require strict proof of the exact amount of damages apportionable to each party. (*Parkenheimer* v. *Van Orden*, 20 Barb. 479; *Van Steenberg* v. *Tobias*, 17 Wend. 562; *Auchmuty* v. *Ham*, 1 Denio, 495.) The jury might have found that the damage from the pulling down of the bridge was caused by gross negligence or willfully, and in such case if the amount of damage sustained could not have been accurately determined, the wrong-doer must bear the burden of such difficulty. (Shearm. & Redf. on Neg., § 594; *Leeds*

v. *Amherst*, 20 Beav. 239.) Whether such a degree of negligence as gross negligence is known to and defined in the law is in serious doubt. (*Perkins* v. *N. Y. C. R. R. Co.*, 24 N. Y. 206–7; *Wills* v. *N. Y. C. R. R. Co.*, id. 186; *New World* v. *Kings*, 16 How. [U. S.] 474; *Hurton* v. *Dibbin*, 2 Q. B. 646–661; *Wilson* v. *Bull*, 11 Mees. & Wels. 113.) If such a degree of negligence is known to and defined in the law, it is defined to be and is " the want of even slight care and diligence." (Shearm. & Redf. on Neg., § 18; Story on Bailments, § 17.) Or "the want of that care which every man of common sense, how inattentive soever, takes of his own property." (Edwards on Bailments, 44.) The defendant having undertaken to remove the plaintiffs' boat, as the jury might have found, without the request, consent or permission of the plaintiffs, against their protest as to the manner in which it was being done, without any pretense of necessity for the haste made, and without allowing the plaintiffs a reasonable time for consultation or preparation, it owed to the plaintiffs in the work of removing the boat, not such slight care and diligence as the absence of which constitute gross negligence, but such care and diligence as a reasonable, prudent and careful person would exercise. (*Hicks* v. *Dorn*, 42 N. Y. 54; *Richmond* v. *Danville R. R. Co.*, 31 Gratt. 812; *Radley* v. *L. & N. W. Railway Co.*, L. R., 1 App. Cas. 754; *Trow* v. *Vt. Cent. R. R. Co.*, 24 Vt. 487; *Penn Co.* v. *Sinclair*, 62 Ind. 301; *S. C.*, 30 Am. Rep. 190.) The plaintiffs were only bound to the exercise of reasonable care, skill and diligence, and were not bound to incur any hazard or assume unusual risks to obviate the consequences of the defendant's acts. (*Roberts* v. *White*, 73 N. Y. 380, 381; *Hamilton* v. *McPherson*, 28 id. 76, 77; *Bevier* v. *D. & H. C. Co.*, 13 Hun, 259; Shearm. & Redf. on Neg., §§ 29, 31, 32, 34, 598.) The cost of repairs, the loss of the use of the boat, and interest, furnished the proper measure of damages. (*Whitehall, etc., Co.* v. *N. J. Steamboat Co.*, 51 N. Y. 369; *Miller* v. *Ex. Prop. Line*, 61 id. 312; *Harris* v. *D., L. & W. R. R. Co.*, id. 657; *The Catharine* v. *Dickinson*,

17 How. [U. S. ] 170; *The Granite State*, 3 Wall. 310; *The Blossom*, Olcott, 188; *Buffalo, etc., Turnpike Co.* v. *City of Buffalo*, 58 N. Y. 639.)

RAPALLO, J. The first point made by the appellant on this appeal is that the trial court erred in refusing to direct the jury that the plaintiffs, upon the evidence in the case, were not entitled to any recovery against the defendant.

The injury done to the plaintiffs' boat by coming in contact with the defendant's bridge was not shown to have been occasioned by any fault of the defendant, and whether it was owing to any fault on the part of the plaintiffs was, upon the evidence, a fair question for the jury. That question was material, however, only with respect to the defendant's counter-claim, for if, as claimed by the plaintiffs, after the boat had become entangled in the bridge, the method adopted by Tanner, the superintendent of the bridge company, for extricating it was reckless and displayed a want of ordinary care, and caused unnecessary injury to the boat, the defendant was liable for the unnecessary injury, even if the plaintiff was in fault in getting its boat in that position. Although the defendant was not to blame for the situation in which the boat was placed, and it became a nuisance which the defendant had a right, for its own protection, to remove, yet in exercising that right it was its duty to use ordinary care to do no unnecessary injury to the boat. (*Hicks* v. *Dorn*, 42 N. Y. 47.)

It was claimed on the part of the plaintiffs that the act of Tanner, in causing the boat to be pulled by main force through the bridge so as to break it and pull the span of the bridge down upon the boat, was a reckless act, evincing a want of ordinary care and prudence, whereby unnecessary injury was done to the boat as well as to the bridge. This charge, if substantiated, was sufficient to constitute a cause of action for the damage thus unnecessarily inflicted. There was evidence sufficient to authorize the submission of the question to the jury, and consequently the court committed no error in refusing to charge the jury that the plaintiffs, upon the evidence

in the case, were not entitled to any recovery against the defendant.

The claim that the uncontradicted evidence in the case showed that Tanner, and the men working under him, in attempting to effect the removal of the boat from under the bridge, were acting at the request or with the consent of the plaintiffs, is not sustained by a reference to the testimony. The trial judge charged the jury distinctly that if Tanner and his men proceeded to remove the boat, either upon the request of George Mark (who represented the plaintiffs), or with his consent expressly or impliedly given by a failure to object to their proceedings, the defendant was not liable; that the men who did the work, although generally in the employ of the defendant, became for that service the servants of the plaintiffs, and for their conduct the defendant was not responsible. Without recapitulating the testimony, we think that upon the evidence it was a fair question for the jury whether Tanner and his men were acting at the request of Mark, and as his agents, or in the exercise of the right of the defendant to free the bridge from the obstruction, and in its service. The verdict necessarily determined that question in favor of the plaintiffs.

Exception was taken to the refusal of the judge to charge the jury, at the defendant's request, that the defendant was not liable in this action unless there was gross negligence on the part of its servants in the removal of the boat.

It is true that the judge declined, in his instructions to the jury, to use the term "gross negligence" in explaining to them the degree of negligence necessary, under the circumstances of the case, to render the defendant liable. But without using that term, he charged them very fully on the point, and described to them, in his own language, what kind of negligence was necessary to charge them with damage. He charged that the boat being against the bridge so as to impede and obstruct its use, and being there without any fault on the part of the defendant, it was the duty of the plaintiffs to remove it at the earliest possible moment and to be extraordinarily diligent in that removal; that if they failed in that duty the

defendant had the right to remove the boat; that in that removal the defendant was not bound to use the highest skill; that it was not bound to have skilled workmen and the best appliances to meet the emergency; that it was only bound to have ordinarily careful men in its employ and such appliances as the statute creating the company required it to have, and that to render the defendant liable they must find that the injury was caused by such acts of carelessness and negligence as ordinarily careful and prudent men, intent on doing their work properly, would not have committed or failed to perform; that if they found that the defendant's servants were not doing the work at the request of the plaintiffs but in the service of the defendant, they were to determine whether or not the boat was so carelessly and recklessly removed that the careless and reckless removal caused the injury.

It was several times repeated throughout the charge, that the defendant was not liable for want of skill in the persons engaged in the removal of the boat, but only for the commission or omission of some act which an ordinarily prudent man would not have committed or omitted, and for reckless conduct on their part.

We think that this was a sufficient definition of the degree of negligence necessary to be shown, and was probably more intelligible to the jury than would have been the term "gross negligence." As said by ALLEN, J., in *First Nat. Bank* v. *Ocean Nat. Bk.* (60 N. Y. 295), the term is incapable of precise definition. It depends very much on the circumstances to which the term is to be applied. It has been most frequently used in cases where a gratuitous bailee has been sought to be made liable for loss or damage of property intrusted to him, the general rule being that a gratuitous bailee is liable only for gross negligence. In such cases the term has been defined to mean the want of that ordinary diligence and care which a usually prudent man takes of his own property of the like description. (*Giblin* v. *McMullen*, L. R., 2 P. C. Cas. 318, 327.) In other cases it is said that a gratuitous bailee is held only to that degree of diligence which a person of common sense, not a specialist or expert in a

particular department, should exercise in such department ; and sometimes it is defined as the want even of slight care or such as even an habitually careless person would take. (2 Whart. on Neg., § 470.)

In 2 Kent's Com. 560, gross neglect is defined to be the want of that care which every man of common sense, under the circumstances, takes of his own property, citing Jones on Bailments, 118, and *Coggs* v. *Bernard* (2 Ld Raym. 909, 913).

In many cases the term itself has been condemned as incapable of being usefully applied in practice, and incapable of being accurately defined. (*Hinton* v. *Dibbin*, 2 Q. B. 646, 650; *Austin* v. *Manchester Railway*, 11 Eng. L. & Eq. 506, 513; *Steamboat New World* v. *King*, 16 How. [U. S.] 474; *Stover* v. *Gowen*, 18 Me. 177 ; *Wilson* v. *Brett*, 11 Mees. & Welsb. 113.)

It seems to us that the jury were correctly instructed as to the rule of liability in this case, and that, under the circumstances, the exercise of such ordinary prudence as would be expected, even of unskilled persons, was not too stringent a requirement, in view of the serious consequences liable to ensue from a reckless performance of the work in which the defendant's servants were engaged.

In *Hicks* v. *Dorn* (42 N. Y. 47), where a boat had become an obstruction in the canal, it was held that it was the duty of the superintendent to remove it, and that he had no right, even if it had become a nuisance, to destroy it, unless such destruction was necessary, and that the question was whether the defendant discharged his duty as a reasonable, prudent and careful man.

According to the testimony of the plaintiff, Tanner was warned that by attempting to force the boat through, he would bring down the bridge, but that nevertheless, after having failed with two tugs to get her through while her gallows frame was in contact with the south chord of the span, he obtained a third boat, and with the united power of the three broke through, bringing the span of the bridge down upon the boat and crushing her joiner work, upper cabins and machinery.

The verdict established that this damage was caused by the

acts of Tanner and his assistants, and that their acts were such as even unskilled men, of ordinary prudence, would not have committed, but were reckless.  A cause of action was thus made out.

But further questions are raised which affect the amount of the recovery.  There was a great conflict in the evidence as to what was done after the span of the bridge had been brought down upon the boat.  The defendant contends that it removed the debris and made the boat fast to the wharf, and that she afterward drifted away and sank, and that it is not liable for the damages accruing after the falling of the span; while according to the plaintiffs' testimony the defendant took no measures to remove the span, but left it on the boat, and she was sunk thereby, and in the night drifted down the river.

The court charged the jury that if the facts were as claimed by the defendant it was not responsible for the subsequent damages but only for those which flowed directly from the fall of the bridge; but that if the span was permitted to rest upon the boat until it sank by the weight of the structure and then drifted down the stream, the plaintiffs could recover for the subsequently accruing damages, provided that they themselves, by the use of ordinary diligence, could not have relieved the boat. The only exception taken on the part of the defendant to this portion of the charge, related to the degree of diligence which the plaintiffs were bound to exercise for the purpose of freeing the boat from the span of the bridge after it had fallen upon the boat, defendant claiming that the plaintiffs were bound to use extraordinary diligence for that purpose, and the court holding that they were bound to use ordinary care and attention in protecting their property.  It seems to us that if the jury found that the defendant had wrongfully pulled the span of the bridge down upon the boat, nothing less than want of ordinary care on the part of the plaintiffs to protect their boat by relieving it of the burden, would absolve the defendant from liability for the damage which ensued.

The court was requested by the defendant to charge with reference to this point, that the plaintiffs could not recover for

any damage done to the boat after a portion of the bridge was pulled upon her, for the reason that such damage, on the uncontradicted evidence in the case, might have been prevented by the plaintiff.

After the first trial of this case, the trial judge so held on a motion for a new trial, and the General Term affirmed this holding. It was mainly based on the testimony of the plaintiff Mark. Upon a new trial this ruling was adhered to and a verdict was rendered for those damages only, which accrued from the fall of the span, and before the sinking of the boat. On appeal by the plaintiffs to the General Term the judgment entered on that verdict was reversed and a new trial ordered, on the ground that on the second trial Mark had so modified his testimony, given on the first trial, as to raise an issue of fact as to whether he could have relieved the boat of the fallen span, and on the third trial, which is the one now under review, his testimony was such as, in our judgment, required the submission of that question to the jury, and it was accordingly submitted to them, with the instruction that if they found that Mark could, with the exercise of ordinary care and diligence, have removed the debris from the boat and saved her from the subsequent injuries, the defendant was not liable therefor. We think this branch of the case was properly disposed of by the court.

It appears that after the boat had sunk, she was raised at considerable expense and all her injuries repaired, as well those arising from her original collision with the bridge, as those accruing afterward, and she was also lengthened beyond her original length, and much time was consumed in all these operations, they having extended over two hundred days, during which period the plaintiffs lost the use of their boat, the value of which was proved to be $40 per day. The gross amount of the expenditures was shown. The expense of repairing the injuries from the collision, and the expense of lengthening the boat, were included. The jury were, under the charge, left at liberty to allow interest on the damages, and this seems, by the defendant's request to charge, to have been assented to by

it.  The defendant requested the court to charge that the burden of proof was upon the plaintiffs, as well upon the question of damages as upon the question of negligence, and that if plaintiffs had failed to show what damages resulted from the alleged negligent acts of the defendant, and to distinguish them from damages for which defendant was not responsible, they could recover only nominal damages.

The court refused to charge this request, and we think properly.  It was too broad.  The first part of the proposition was undoubtedly correct, but the testimony clearly showed some substantial damages to which the plaintiffs were unquestionably entitled, if the issues as to negligence were decided in their favor, and the failure to distinguish as to all the items between damages of that character, and those to which the plaintiffs were not entitled, could not be visited on the plaintiffs, under the circumstances, by confining their recovery to mere nominal damages.

The same remark is applicable to the exception to the refusal of the judge to charge that there was no evidence in the case from which the jury could determine how long the plaintiffs were deprived of the use of their boat by reason of any negligence of the defendant, and that, therefore, the plaintiffs were not entitled to recover any damages for the supposed loss of the use of the boat.  If the request had been to charge that the jury could only allow such damages, either for expenses of repairs or loss of time, as were affirmatively shown by the evidence to have been caused by the acts for which the defendant was responsible, a different proposition would have been presented.

It is very evident from the verdict, that the jury must have distinguished between the damages for which the defendant was responsible, and those which were attributable to the misfortune of the plaintiffs in getting their boat into the perilous position in which she was.  According to the testimony the total expense of the raising of the vessel and of the repairs was from $9,700 to $9,800, and the total loss of time, two hundred days, which, at $40 per day, amounted to $8,000.  These two

items, with interest to the time of trial, would have amounted to nearly $30,000, and all that was specifically shown to be included therein for damages for which the defendant was not responsible, was $2,400 for lengthening the boat and about $900 for repairs of damages caused by the collision with the bridge, and some small items.   It is obvious from the amount of the verdict, that the jury did not proceed on the theory of charging to the defendant, in the first instance, the total loss, and then deducting the items for which the defendant was shown not to be responsible, thus shifting the burden of proof. They were not instructed by the court to pursue that course.

After examining the numerous other exceptions in the case, we are of opinion that there is none which requires a reversal of the judgment, and it should, therefore, be affirmed, with costs.

All concur

Judgment affirmed.