Martin Foley, Appellant, *v.* Edward J. McKeever, Respondent.

*Shipping — a vessel, anchored outside of the anchorage limits, injured by a collision — the owner cannot recover damages.*

The owner of a launch, which, contrary to the regulations of the treasury department regulating the anchoring of vessels in the harbor of New York, and defining the anchorage limits, is anchored in a slip outside of such limits, as well as moored to a dock by lines, is not entitled to recover damages resulting from a collision with a steam lighter which, in an attempt to enter and turn around in the slip, picks up the anchor chain and draws the launch into a collision.

Bartlett, J., dissented.

APPEAL by the plaintiff, Martin Foley, from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, first district, in favor of the defendant, entered in the office of the clerk of said court on the 13th day of June, 1900, dismissing the complaint.

*James D. Bell,* for the appellant.

*Albert A. Wray,* for the respondent.

GOODRICH, P. J.:

The plaintiff's launch was lying bow out, fast to the dock, in a slip at the foot of Baltic street, Brooklyn, where she had been for several months. She also had out an anchor to which a chain led from the bow for a distance of 125 feet. The plaintiff testified that this anchor was "right up in between the timbers" of the dock, and one of his witnesses testified that it was close alongside of the dock. In either case the launch was at anchor, though also moored to the dock by lines. This is contrary to the regulations of the Treasury Department, regulating the anchoring of vessels in the harbor of New York, and defining the anchorage limits. These regulations were adopted by the Treasury Department in pursuance of the authority of an act of Congress (25 U. S. Stat. at Large, 151), and have the force of law. The place where the launch was anchored was outside the limits defined by the regulations. The plaintiff was, therefore, acting in violation of the law by having out an anchor and chain in a slip outside of anchorage limits. This was the proximate cause of the damage, for it is evident from the testimony that the wheel of the defendant's steam lighter, in an attempt to enter and turn around in the slip, picked up the anchor chain and drew the launch toward and into collision with the lighter, thereby causing the injury to the launch, and that except for the chain the damage would not have been occasioned.

The judgment should be affirmed.

All concurred, except BARTLETT, J., who read for reversal.

WILLARD BARTLETT, J. (dissenting):

I am unable to concur in the conclusion of the presiding justice that the plaintiff was properly nonsuited because the proof estab-

lished contributory negligence on his part in violating the treasury regulation forbidding the anchorage of vessels on the East river within 150 feet of any wharf or pier.

The plaintiff's launch was fastened in two ways: *First*, by lines forward and aft; and, *secondly*, by an anchor under the dock, with a chain 125 feet long.

There was evidence which would have justified a finding that the defendant's steamer in coming to the dock struck the launch, although there was ample room to avoid it. There was nothing to show that the first collision was anywhere near the anchor chain. The steamer, however, appears to have struck the launch a second blow in such a way as to entangle the anchor chain in her wheel, whereupon some one on the steamer broke the chain, at the order of the captain, and the launch was shoved up against the float and considerably damaged.

There is no doubt that the plaintiff had disregarded the treasury regulation in anchoring his launch contrary to the prohibition relative to the East river anchorage. I cannot agree with Mr. Justice GOODRICH that this is shown to have been the proximate cause of the damage to the launch so clearly as to justify a nonsuit.

It does not appear that the first collision was in anywise attributable to the use of the anchor, and if the first collision had not occurred the defendant's steamboat would probably have avoided the anchor chain altogether.

It seems to me that the facts of the case may be viewed in a light which seems to have escaped the attention of the trial judge. The fact that the plaintiff was chargeable with a violation of the treasury regulation in using an anchor at a place where anchoring was prohibited, did not justify or excuse the captain or pilot of the defendant's steam lighter in inflicting unnecessary injury upon the plaintiff's launch. There is testimony from which it might well be inferred that the damage done to the launch could have been avoided by the exercise of a very slight degree of care. It appears, moreover, that the pilot, when about to break the chain, remarked that he did not care anything for the plaintiff's boat, which had no right there, and the account of the whole occurrence, as narrated by the plaintiff's witnesses, indicates that the persons managing the lighter were indifferent to the fate of the launch, and that the injury which

was inflicted upon it, aside from the breaking of the anchor chain, might readily have been avoided. Under these circumstances, the defendant can be held liable for the unnecessary injury, even though the plaintiff was at fault in anchoring his boat at the pier. (*Mark Hudson River Bridge Co.,* 103 N. Y. 28; *Hicks* v. *Dorn,* 42 id. 47.)

Bearing in mind that a nonsuit may often be improper, even though upon the same evidence after the case was submitted on both sides, a judgment for the defendant on the merits could be sustained, I think the court erred in nonsuiting the plaintiff in the present case. I, therefore, vote for a new trial.

Judgment of the Municipal Court affirmed, with costs.