(81 Misc. Rep. 344.)

## SOTEL v. CITY OF NEW YORK.

(Supreme Court, Trial Term, Kings County. June 16, 1913.)

1. MUNICIPAL CORPORATIONS (§ 832*)—SEWERS—OVERFLOW—NEGLIGENCE.

Where plaintiffs' property was flooded by an overflow of a sewer, due to a temporary sudden stoppage, and, though it did not appear that the sewer had been frequently inspected, there was no showing that the city had omitted to exercise a reasonable degree of watchfulness in ascertaining its condition from time to time and in preventing it from becoming dilapidated or obstructed, there was no actionable negligence with reference to the sewer itself or the obstruction.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1782; Dec. Dig. § 832.*]

2. MUNICIPAL CORPORATIONS (§ 832*)—SEWERS—OVERFLOW—DELAY IN REMEDYING DEFECT—NEGLIGENCE.

A sewer having become obstructed and having overflowed plaintiffs' premises January 1, 1911, notice was given to an inspector of the city

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Building Department between 8 and 9 o'clock on that evening. He visited the premises the next day, and then telephoned to the person in charge of the unsafe building division of the bureau of buildings, who on the next day reported the fact to the superintendent of buildings, who promptly communicated with the sewer department, and the obstruction was removed about 12:30 on January 3d. *Held*, that the city was negligent in failing to remove the obstruction with reasonable promptness, notwithstanding the intervention of a holiday, and was therefore liable for any damages proximately resulting from such delay, independent of the happening of the overflow.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1782; Dec. Dig. § 832.*]

3. MUNICIPAL CORPORATIONS (§ 845*)—NOMINAL DAMAGES.

Where a city was not negligent in permitting an obstruction of a sewer and the consequent overflow onto adjoining premises, but was liable for negligent delay in removing the obstruction, and it was impossible to separate the original damage from the increased damage, if any, resulting from the city's delay, the property owners were entitled to nominal damages only.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1796–1802; Dec. Dig. § 845.*]

Actions by Mary Sotel, by Maria Deveraux, by Edward A. Last and another, by Dennis Kelleher, by Andrew Johnson and another, and by Timothy Cronin and another against the City of New York to recover damages for the overflow of a sewer. Judgments for plaintiffs for nominal damages.

William J. Bolger, of New York City, for plaintiffs.

Archibald R. Watson, Corp. Counsel, of New York City (James T. O'Neill and James D. Bell, both of Brooklyn, of counsel), for defendant.

BENEDICT, J. These six actions were, by the consent of counsel, tried together before the court without a jury. The several owners of the premises numbered 520, 522, 524, 526, 528, and 530 Fifty-Second street, Brooklyn, are suing the city of New York for damages to their respective buildings, claimed to have been caused by the stoppage of the sewer in Fifty-Second street and the consequent backing up of the water flowing into the same. Attention was first called to the condition, as far as the evidence discloses, on Sunday, January 1, 1911, when the witness Sotel, husband of one of the plaintiffs, who lives at No. 526 Fifty-Second street, found water standing in the cellar of his house between 6 and 7 o'clock in the evening. He sent for a plumber, and after an investigation by him an inspector of the building department, named Bromell, was sent for and visited the premises between 8 and 9 o'clock that evening. He also visited these and other premises in the vicinity the next day, January 2d, and then telephoned the witness Snackenberg, who was in charge of the unsafe building division of the bureau of buildings. On January 3d Snackenberg reported the fact to the then superintendent of buildings, who promptly communicated with the sewer department, and at about 12:30 that day the obstruction in the sewer was removed, and the water then flowed off. According to the testimony of Higgins, the foreman of the sewer re-

pair yard which attended to the matter, the men were sent on the 3d to clear out the sewer upon the complaint of a police lieutenant, and it does not appear whether or not the communication from the building department had anything to do with this action. The foreman also testified that he was at the yard on Monday, January 2d, and that "we," meaning, I suppose, he and his men, worked all day Monday.

[1] In my opinion there is no evidence of any negligence on the part of the defendant which can be said to have caused the stoppage of the sewer. This sewer had not, to be sure, been inspected very often; but I do not find from the evidence that the defendant had omitted to exercise a reasonable degree of watchfulness in ascertaining its condition from time to time and preventing it from becoming dilapidated or obstructed, as was required by the rule laid down in McCarthy v. City of Syracuse, 46 N. Y. 194. In the present instance the stoppage was apparently of such sudden occurrence that a frequency of inspection required by the most rigid rule of care might not have disclosed it before the water began to back up into the plaintiffs' premises. Smith v. Mayor, 66 N. Y. 295, 23 Am. Rep. 53; Weidman v. Mayor, 84 App. Div. 321, 82 N. Y. Supp. 77, affirmed 176 N. Y. 586, 68 N. E. 1125; Beyer v. City of New York, 141 App. Div. 679, 126 N. Y. Supp. 455. In the first of these cases the court, by Allen, J., said:

"The defendants can only be made responsible to the plaintiff for the damage sustained by him by reason of the overflow of the sewer into his cellar and upon his premises, upon proof of some fault or neglect on their part, either in the construction of the sewer, or in keeping it in proper repair. * * * It is found upon sufficient evidence that the overflow was caused by a stoppage of the sewer with sand, dirt, and refuse matter washed in from the street, and that at or just before the flooding of the plaintiff's premises there was an unusually heavy shower of rain. There is no proof of any obstruction before that time. There being no fault in the construction of the sewer, causing the overflow, it was incumbent upon the plaintiff to show a neglect by the defendants to remove the obstruction after notice of its existence, or some omission of duty on the part of the city officers in looking after it and seeing that no obstruction occurred. * * * The city does not insure the citizen against damage from works of its construction, but is only liable, as other proprietors, for negligence or willful misconduct. The principles upon which municipal corporations are held liable for damages occasioned by defects in streets and sewers and other public works are well settled by numerous cases, and the liability is made to rest, in any case, upon some neglect or omission of duty."

In Weidman v. Mayor, supra, the Appellate Division, by Van Brunt, P. J., stated the rule as follows:

"The city is not an insurer of the condition of its various appliances for the comfort and convenience of its inhabitants, but is bound to use reasonable care and diligence in caring for these various appliances and in keeping the same in repair."

In Beyer v. City of New York, supra, the court, by Jenks, J., said:

"The obligation upon the defendant was due care to prevent the overflow of the sewer through the house connection of plaintiff's premises. The evidence does not show that there was fault in the construction of the sewer, or negligence, either in the omission to remove the obstruction which caused the overflow, after notice thereof, actual or constructive, or in the inspection of the sewer system. The evidence indicates that the 'backing up' of the

sewage was caused by a stoppage of sticks used by children when in the street at play in the game of tip cat. It does not appear how long this stoppage had existed, and consequently that any reasonable inspection, such as could be exacted by the most rigid rule imposed upon a municipality in charge of so great a system, could have revealed the obstruction."

In the cases at bar the overflow was an isolated instance, and it is not shown that there was any defect of original construction of the sewer which could account for or reasonably be expected to have caused the stoppage upon this occasion. On the contrary, it was proven that the sewer had an unusually good opportunity for clearing itself of obstructions on account of the grade of the street in which it was constructed, and under the authorities cited the city would not be liable for damages resulting from such an obstruction of the sewer, provided that it used reasonable diligence in remedying the defect after notice of its existence.

[2] I think, however, that the city, through its employés, is charge-. able with negligence in not sooner remedying the defective condition in this case. Notice was given on the night of January 1st to an official whose duties related to the safety of buildings in the district in question, and there was some evidence that this official, who was an inspector, reported the dangerous condition to the head of the unsafe building division of the bureau of buildings some time on January 2d, stating the cause of the dangerous condition to be a sewer flood. This last official apparently did nothing about the matter until the following morning, when notice was sent to the sewer department, as above mentioned. It is obvious that men might have been sent early on Monday morning to remove the stoppage. Yet nothing was done until Tuesday noon. This, I think, was negligence, for the damages flowing from which the defendant is responsible. The contention that defendant was excused from prompt action by the fact that Monday was a legal holiday is not entitled to serious consideration. It is the plain duty of the city to have somewhere a force always ready, day and night, Sundays and holidays, to meet emergencies of this nature, just as much as it is to have a force ready to put out fires; and it does not seem to me that the city is exonerated from liability for damages resulting from its negligence merely because it is not clearly shown that notice was given to the particular branch of the municipal government charged with the duty of repair of the sewer. In other words, I think the plaintiffs were not charged with the duty of notifying a particular official of the city and determining at their peril which officer had jurisdiction, but only with the duty of calling the defect to the attention of some responsible representative of the city government whose duty it would be to report it; and when notice, as in this case, had been given to an inspector of the building department of an unsafe condition of buildings, which was the result of a defective condition of the sewer, the plaintiffs were justified in assuming that the official receiving the notice would communicate its information, being of an emergency nature, to any other branch of the municipal government affected thereby. It is clear, therefore, that if the damage of which the plaintiffs complain resulted from the *delay* in remedying the defective con- ·

dition, and not from the happening of the overflow, the city would be liable for the entire damage.

[3] The difficulty which confronts the court is involved in the determination of this question: Have the plaintiffs shown by a pre-, ponderance of the evidence that the damages of which they complain did in fact result from the delay in making the repair within a reasonable time? I think not. The most favorable inference which can be drawn from the evidence is that the damage was enhanced by such delay; but it is impossible upon the evidence to separate the original damage, for which the city is not liable, from the increased damage, if any there was, which resulted from the delay, for which the city would be liable. Monomoy Co. v. City of New York, 132 N. Y. Supp. 438. In fact, from the very nature of the case it appears probable that the damage for which the defendant is liable is not capable of exact or even of approximate estimate in a court of law, and that the plaintiffs' recovery, at the most, must be nominal. They are entitled to nominal damages for the negligence—i. e., the delay—and their right to recover "for nominal damages does not depend at all upon the plaintiffs showing any actual or any perceptible damage," and this "right to recover nominal damages was substantial, though the quantity of damages was not." N. Y. Rubber Co. v. Rothery, 132 N. Y. 293, 296, 30 N. E. 841, 842, 28 Am. St. Rep. 575. The question thus presented was not discussed at the bar nor in the briefs of counsel, and my own research has not disclosed much authority on the point. The case which, as it seems to me, touches most nearly upon the question is Mark v. Hudson River Bridge Co., 103 N. Y. 28, 8 N. E. 243, wherein Judge Rappaelo stated the rule as follows:

"The defendant requested the court to charge that the burden of proof was upon the plaintiffs, as well upon the question of damages as upon the question of negligence, and that if plaintiffs had failed to show what damages resulted from the alleged negligent acts of the defendant, and to distinguish them from damages for which defendant was not responsible, they could recover only nominal damages.

"The court refused to charge this request, and we think properly. It was too broad. The first part of the proposition was undoubtedly correct, but the testimony clearly showed some substantial damages to which the plaintiffs were unquestionably entitled, if the issues as to negligence were decided in their favor, and the failure to distinguish as to all the items between damages of that character and those to which the plaintiffs were not entitled could not be visited on the plaintiffs, under the circumstances, by confining their recovery to mere nominal damages.

"The same remark is applicable to the exception to the refusal of the judge to charge that there was no evidence in the case from which the jury could determine how long the plaintiffs were deprived of the use of their boat by reason of any negligence of the defendant, and that therefore the plaintiffs were not entitled to recover any damages for the supposed loss of the use of the boat. If the request had been to charge that the jury could only allow such damages, either for expenses of repairs or loss of time, as were affirmatively shown by the evidence to have been caused by the acts for which the defendant was responsible, a different proposition would have been presented."

In the cases at bar, however, the record did not clearly show "some substantial damages to which the plaintiffs were unquestionably entitled, if the issues as to negligence were decided in their favor." On

the contrary, the "substantial damages" appear to have resulted from the stoppage and overflow, and not from the delay in applying the remedy. See testimony of Sotel, pages 29, 30, stenographer's minutes; testimony of Petersen, page 47 et seq.; testimony of Johnson, page 62.

Judgment is directed in favor of the plaintiff in each action for six cents' damages, 30 days' stay of execution, and 60 days to make case on appeal granted. Submit findings in accordance herewith on June 23, 1913.