# Forster *versus* Juniata Bridge Company.

1. Property carried adrift continues to be the property of him who owned it at the time of the flood. When stranded, the owner has the right to enter on the land and remove it, but he is not bound to do so, and may abandon it without incurring responsibility for injury done by it: And it would seem that unless there has been *negligence* in the management of property carried adrift, the owner is not liable for damage done by it, even though he does not remove it after notice to do so. Per GIBSON, C. J.

2. The owner of the land on which property is stranded, after notice to its owner to remove it, and neglect or refusal to do so, may disencumber his property of it by casting it back into the stream; but he has no right *to appropriate it to his own use*. He may remove it at his own expense; but the refusal of the owner of the property to remove it will not divest the right of the latter in it, or bar his entry to reclaim it. He may resume the ownership after abandonment.

3. The owner of the land has no lien on property cast on it by drift. And where the owner of the latter proves his property in it and the actual conversion of it by the owner of the land, the latter is liable in trover and conversion for damages.

ERROR to the Common Pleas of *Dauphin county*.

This was an action of trover and conversion, brought on the 9th of August 1847, by the Juniata Bridge Company against John Forster, who resided in Harrisburg, for the recovery of a portion of the timber and other materials of one span of a bridge that was swept off by the great flood in March 1846, and lodged on the upper end of the island of the defendant opposite to Harrisburg. That portion of the bridge for which suit was brought, lodged on the island of General Forster in the night of the 14th or morning of the 15th March 1846, and, by its lodging there, turned the current of the stream and with it a body of ice over the island, causing damage to the defendant by injuring a peach-orchard and other fruit-trees, stripping off the soil, washing holes in the island, and carrying off interior fences. Two or three weeks after it had lodged there, Forster met Mr. Hollman, the president of the Bridge Company, in Harrisburg, and told him that one span of that bridge had lodged on his island, and asked him if the com-

pany would take it away, and required of him that the company should remove it from his island. The president of the company replied to him, *that he would not trouble himself about it.* To which Forster answered, If you or the company don't take it away, I will. It was further in proof that previous to this time one of the directors had also been spoken to to the same effect, by General Forster, and a desire expressed that the Bridge Company should remove it. The request was not complied with, nor was any attention paid by the president or the company to the notice and demand made by General Forster upon the president; and it remained where it had lodged, without the company paying any attention to it or taking any steps towards the removal of it, until the first week in July 1846.

Previous to that time, Forster had been urged by the tenant of the island to take the bridge away, because it was an obstruction to his farming the land, and an inconvenience to him. He proved that by reason of its being there, he was obliged to stable his cattle and hogs, as he could not pasture them or turn them out, because it lay in such a position on the island that he could not make his fences and keep the cattle off his cultivated fields. The tenant testified that he repeatedly urged Forster to take the bridge away before he did so. After being thus urged, Forster employed hands to take it apart. They commenced doing so in the first week of July, and in a week or ten days they finished taking it apart carefully, and hauled it (about 600 yards) to an unenclosed yard, near the barn, on the island, and there piled it up; the spikes, bolts, and other iron being hauled to the granary at the barn on the island, and there deposited, and there remained up to and at the time of the trial. Part of the materials were used by the plaintiff in the erection of other buildings.

Woodward, a witness on the part of the plaintiff, proved that he had called upon General Forster, at the request of three of the directors, to see what arrangement could be made about the bridge. That this was while they were working at the bridge, taking it apart—*perhaps had taken it all apart.* That Forster told him he had it, intended to keep it, and the company might help themselves. He further testified that he again called upon General Forster on the 26th July 1846, with a resolution of the board of managers of the company, adopted on the previous day, and told him he came "authorized to demand the bridge, and pay him for taking it apart, *provided he had taken it apart carefully, and had not damaged it much or to a great extent in taking it apart;* that he demanded it then, and had the money along to pay him. He said he had it, intended to keep it, and the Bridge Company might make the most of it." This was after the bridge had been taken apart and hauled to the yard of the barn. This witness further proved that he knew on the 16th of March 1846 that this span had lodged on

this island, and within two weeks of that time he informed the company where it was. He further proved that he did not go to the island where this span of the bridge had lodged and had been piled up, to demand it of General Forster, or the tenant in possession of the island, or any other person. And that he never was on the island before or after it was taken apart.

The resolution of the company authorized Woodward to call on John Forster and demand that portion of the bridge that landed on said Forster's island, or remuneration for the same if he had destroyed or molested it in any manner ; and in case of his refusal, that counsel be requested to bring suit.

PEARSON, J., charged :—This is an action of trover and conversion, brought for the recovery of a portion of the timber of a bridge owned by the plaintiff, and which was swept off by a flood and lodged on the property of the defendant. Many points of law have been raised on the trial, on which we are requested to instruct you.

The defendant contends that he is not responsible for the plaintiff's property, that it came on to the island of which he is owner at a time when it was leased out to a tenant, who is alone responsible, and of whom the demand should have been made. That the remedy of the plaintiff was by peaceably entering on the premises and removing the property. That defendant, as owner of the property, had a right to retain the lumber, materials, &c., until compensated for the damage done his island by its lodging and remaining there. That he has a right to retain it till remunerated for his expenses in removing it, and that no action will lie till tender made of such expense. That the proposed payment by Woodward was no tender, and the demand made by him was insufficient, not being made at the proper place or of the proper person. And that the notice to Hollman, president of the company, to remove the bridge, and his reply, show an abandonment of the property by the plaintiff, and fully justified the defendant in converting it to his own use. And after that he was guilty of no tortious conversion in his appropriation of the property.

This bridge having floated upon the defendant's property without any default of either plaintiff or defendant, the plaintiff would have been justified in entering on the land of the defendant without asking his permission and removing it. He was not bound so to enter, and it would be but proper in every case to ask permission of the owner. After permission asked, if the plaintiff was forbidden to enter, he could resort to his action; he is not bound to enter when so forbidden. No demand of the tenant was necessary. It seems that the defendant exercised all the authority over it that was done by any one; the tenant neither claimed nor touched it; the defendant alone employed hands to take the bridge to pieces, and remove it to his house upon the island, where this tenant re-

sided, and afterwards to use it as his own, made a portion into fences, and built a house or houses of another portion; part still remains in his possession.

The demand, if made as testified to by Woodward, was sufficient, and need not be made *on the island or of the tenant;* and even if no demand had been made, so far as he used the property and converted it to his own use, it would support the action without demand. The defendant had no lien on the materials for the labor bestowed on them; the action can be sustained without a tender, and it would be impossible for the plaintiff to know how much to tender. If the defendant claimed a lien, he should have so stated at the time, and furnished a bill of the amount of his damage and expenses; and then, if the plaintiff refuse to pay, the question would fairly arise. The action can be sustained without a tender, and the only question of any moment is, whether the defendant, under the circumstances, is entitled to have deducted from the value of the property, the expenses incurred in taking it to pieces and removing it to a place of safety or where it would be valued. And we are of opinion and instruct you, that the defendant has a right to be compensated what it was reasonably worth to take the bridge to pieces and remove it, especially after having notified the president of the company to remove it or that he would remove it himself. The damages, if any, should be the value of the materials after deducting all the expense of taking them to pieces and removing them to a place of safety, or to a place of sale, or where they would be of value. The mere declarations of Hollman, president of the company, would not be an abandonment of the property, or bar the plaintiff from removing, and would not justify the defendant in converting it to his own use. If the defendant sustained damages by the bridge being left there an unreasonable time after plaintiff knew it was there, and the president of the company was requested to remove it, that should be paid for or deducted from the amount of damages; but not the injury arising from the accident of the bridge coming upon the defendant's island and causing it to be washed by the flood; but if not removed in a reasonable time, and washing took place in consequence afterwards, it would be a fair subject of deduction.

To this charge defendant's counsel excepted.

Verdict was rendered for plaintiff for $300 damages.

It was assigned for error:

1. The court erred in charging the jury "that the demand, if made as testified to by Woodward, was sufficient, and need not be made on the island or of the tenant; and even if no demand had been made, so far as he used the property and converted it to his own use, it would support the action without demand."

2. The court erred in charging the jury that "the defendant

[Forster v. Juniata Bridge Company.]

had no lien on the materials for the labor bestowed on them; that the action can be sustained without a tender, and that it would be impossible for the plaintiff to know how much to tender. If the defendant claimed a lien, he should have stated it at the time, and furnished a bill of the amount of his damages and expenses, and then, if the plaintiff refused to pay, the question would fairly arise. The action can be sustained without a tender."

3. The court erred in charging the jury that "the mere declaration of Hollman, the president of the company, would not amount to an abandonment of the property, or bar the plaintiff from recovering; and would not justify the defendant in converting it to his own use."

The case was argued by *Fisher*, with whom was *Forster*, for plaintiff in error.

It was contended, *inter alia*, that the plaintiff was bound to remove the bridge in a *reasonable* time, especially after request to do so; and not having done so, the company were trespassers, and cannot sustain this action. The demand should have been made at the place where the timber was found or kept: *Story on Bailments*, sec. 117.

If defendant was entitled to compensation, a sufficient tender should have been made before suit brought.

*McCormick*, for defendant.—1. The plaintiff proved that a resolution was adopted by the board of managers of the company on the 25th July 1846, authorizing their agent, Woodward, to demand from General Forster the part of the bridge lodged upon his island; and on the next day he called on General Forster with a copy of the resolution, and informed him of it, and made the demand; that the defendant replied, "He had it, intended to keep it, and the Juniata Bridge Company might make the most of it." It was also proved that General Forster took the bridge to pieces, and appropriated the materials to his own use, by making fences of the weather-boards, and using other parts in the erection of a frame for a rolling-mill, and afterwards in the building of four frame houses. The timber was used by him *before this suit was brought*, and the iron was put away in his granary: there was, therefore, an actual conversion of the property, and hence no demand was necessary on the part of the Bridge Company to enable them to recover in this action. The defendant did not live on the island, and of course no demand could be made on him there; and the tenant, Van Horn, who was examined as a witness, disclaims having any thing to do with the bridge: he says that after the flood he leased the farm on the shares; that Mr. Forster had to put up the fences,

2 I

and that it was his business to remove the bridge, and that he, the witness, contributed nothing towards the removal of it.

2. No tender of expenses or compensation was required. This question was decided in Etter *v.* Edwards, 4 *Watts* 65, which was an action of replevin for a raft of boards that went adrift on the Susquehanna River, and it was determined that a person who voluntarily took possession of the boards, and removed them to a place of safety, had no lien on them for expenses thus incurred, and that no tender of such expenses was necessary to sustain the action. The same case decides that the act of 20th March 1812, 5 *Sm. Laws* 335, providing for the compensation of persons taking up timber that may have gone adrift, does not apply to the case of that which has lodged on an island. Treating the defendant as the finder of lost property, it is well settled that he had no lien for expenses gratuitously incurred in taking care of it: Binstead *v.* Buck, 2 *W. Black.* 1117; Nicholson *v.* Chapman, 2 *H. Black.* 258; *Story on Bailments* 61.

3. The declaration of the president is no better than that of any other member of the corporation; and to lay a ground for it, the defendant ought to have given evidence of the power and duty of the president as derived from the charter or regulations of the company, to show that the matter referred to was within his authority. In the Farmers' Bank of Bucks County *v.* McGee, 2 *Barr* 318, it is held that to make the agreement of the president of a private corporation evidence, it should be shown to be within the scope of his authority.

The opinion of the court was delivered June 30, by

GIBSON, C. J.—It is not pretended the company had lost its title to this fragment of its bridge by the lodgment of it on the defendant's island. A boat, or a raft, or an ox, driven on it by the current, would continue to be the property of him who owned it at the time of the flood; and why not any other sort of property? Even driftwood, if it could be identified, might be reclaimed. Rails frequently are. The common as well as the civil law allows the owner of stranded property to enter and take it away. Mr. Justice STORY says truly, that if timber be drifted on another's land, not by unavoidable casualty, but by the owner's negligent management of it, he is answerable for damage from it; but he adds that the same rule would probably be applied if the owner were to disregard a notice to remove it, though it had been drifted on the land purely by inevitable casualty. The latter is not so clear. In the Lehigh Bridge Company *v.* The Lehigh Coal and Navigation Company, 4 *Rawle* 24, it was ruled on good authority, that where a loss happens from an act of Providence, it is not to be borne by him whose superstructure happened to be made the immediate instrument of it; and that to charge him, negligence

[Forster *v.* Juniata Bridge Company.]

must be mingled with the cause of it. If that be so, there must be negligence in the first instance, and the sufferer must get rid of the instrument and the injury as he may. The company were not bound to follow the wreck of their bridge. They might abandon it without incurring responsibility for it, and the defendant, after notice given, might have disencumbered his land of it by casting it back into the river; but he could not appropriate it to his own use. He certainly might have removed it at his own expense; but the refusal of the company to remove it did not divest their property in it or bar their entry to reclaim it. It was held, in Etter *v.* Edwards, 4 *Watts* 65, that a riparian owner has neither lien nor claim for preserving a raft cast on his land; and this, on the authority of *Doctor and Student,* c. 51, in which it is said that a man who has abandoned his property may at any time resume the ownership of it. Even a lien would not serve the defendant. It would rebut *evidence* of conversion arising from demand and refusal; but the company proved property and actual conversion, which made their case complete.

Judgment affirmed.