## Livezey *versus* Philadelphia.

1. In an extraordinary flood, a bridge was carried away and thrown upon land of a lower owner, and damaged it. *Held*, that without more, a presumption that it was negligently constructed did not arise.

2. The maxim, *Actus Dei nemini facit injuriam*, applied.

3. The concurrence of negligence with the act of God is necessary to fix a party with liability for mischief done in such cases.

4. A bridge was washed by a flood upon the land of a lower owner: *Held*, that it was not the duty of the owner of the bridge to remove it.

5. It is not essential to his immunity, that the owner of the bridge should have abandoned his property in it.

6. The landowner can always remove it himself.

7. Whether the owner of the bridge can maintain replevin against the landowner without tendering the expense of removal, *quære?*

8. Lehigh Bridge Co. *v.* Lehigh Coal & Nav. Co., 4 Rawle 94, and Foster *v.* Juniata Bridge Co., 4 Harris 393, remarked on.

January 13th 1870. Before THOMPSON, C. J., READ and SHARSWOOD, JJ. AGNEW, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 394, to January Term 1869.

This was an action on the case brought September 13th 1867, by Thomas Livezey against The City of Philadelphia.

The declaration contained four counts:

1. That the plaintiff owned a tract of land on Wissahickon creek, Philadelphia, on which and near the margin of the creek, stood the Valley Green Hotel and also large trees of great value, both for use and beauty; that said creek had immemorially flowed by the land of the plaintiff, and it was his right that it should continue so to flow. Yet the defendant, intending to injure the plaintiff in his estate in said property, wrongfully obstructed and diverted the natural flow of the waters of the creek, whereby they washed away a great part of his land, killed a number of his trees, &c.

2. Is substantially as the first, with addition of an averment that the obstruction was occasioned by parts of a bridge of the defendant, lying on the plaintiff's land, which it was the duty of the defendant to remove.

3. That the defendant erected an iron bridge across the creek

[Livezey v. Philadelphia.]

above the plaintiff's land, that it was the duty of the defendant so to construct the bridge that it should not be carried away by the freshets which occur at certain seasons of the year and were well known to defendant; that defendant so negligently and insufficiently constructed and fastened the bridge, that it was washed away by the waters and carried on to the land of the plaintiff, where it has since remained, and it was the duty of the defendant to remove it. Yet the defendant obstructed the natural flow of the water by means of the bridge and diverted the waters on to the land of the plaintiff, whereby they have washed away a great part of the land, killed the trees, &c.

4. That the plaintiff owned a mill and mill-dam on the creek below the bridge, that the bridge was so negligently built that it was carried away and so obstructed and diverted the flow of the waters, that they carried from the plaintiff's lands, stone, earth, rubbish, &c., and filled his dam, &c.

On the trial, October 26th 1868, before Hare, P. J., the plaintiff gave evidence by W. R. Bartle, that the iron bridge across Wissahickon creek was washed away by a freshet at night in July 1865, and carried on to the plaintiff's property; a great deal of sand collected on it, making a bar in the creek, which turned the current towards the Valley Green property, washed away the shore and undermined some trees. On cross-examination, witness testified: " A large covered wooden bridge, from about a mile above the iron bridge was washed down the creek. I think it must have butted against the iron bridge and carried it off. * * * That was the greatest freshet I had known on the creek. The water rose ten feet higher than its usual level." R. Sand, Supervisor of Highways, testified: " The iron bridge was put up in 1863 or 1864; it was large, span above 50 feet and very heavy; wooden bridges had floated from there twice before; the iron bridge was 4 or 5 feet higher than the wooden ones; a wooden bridge broke loose and came down the stream and I suppose it butted against the iron bridge." The chief commissioner gave orders to remove the bridge, but after trial, it could not be done and was so reported to the commissioner. On cross-examination he said; " The freshet was the highest I have known. I do not believe that the iron bridge would have been washed away without the wooden bridge from above butting against it."

W. W. Smedley, the chief commissioner, testified that after endeavoring to have the bridge removed, he sold it.

M. McKeowen, who bought the bridge, testified that they tried every summer after 1865 to move the bridge, but could not get it out.

The plaintiff gave additional evidence as to the injury to his Valley Green property and mill, of notice to the city authorities to remove the bridge, &c., and closed. The court then

[Livezey *v.* Philadelphia.]

ordered that a nonsuit should be entered.   The plaintiff removed the case to the Supreme Court, and assigned the entering of the nonsuit for error.

*W. S. Price*, for plaintiff in error.

*T. J. Barger*, City Solicitor, for defendant in error, cited: Lehigh Bridge Co. *v.* Lehigh Coal & Navigation Co., 4 Rawle 9; Forster *v.* Juniata Bridge Co., 4 Harris 393.

The opinion of the court was delivered January 24th 1870, by
SHARSWOOD, J.—The learned judge of the District Court, after having heard the plaintiff's case, being of the opinion that he had given no such evidence as in law was sufficient to maintain the action, entered a nonsuit, under the 7th section of the Act of March 11th 1836, Pamph. L. 78.

The declaration contains four counts.   The first two, with some unimportant variations in the mode of statement, allege, as the ground of complaint, that the defendants wrongfully and injuriously obstructed, diverted and turned the ancient, natural and accustomed flow of Wissahickon creek, and maintained, kept up and continued such obstruction and diversion by means of a part of a bridge of the said defendants, wrongfully kept lying in the said creek, opposite to the land of the plaintiff.   The last two allege that the defendants so negligently and insufficiently erected and constructed, secured and fastened said bridge that it was afterwards washed away, removed and carried by the waters of the said creek, from the place where it was erected down to and into the bed and channel of the said creek, where it passes through the land of the plaintiff and upon the said land.

As to the ground of negligence, it may be dismissed with the remark that there was no evidence whatever of any insufficiency in the construction or fastenings of the bridge.   Had it been carried away by an ordinary freshet a presumption to that effect might perhaps have arisen.   But it was a clearly proved and uncontradicted fact that the freshet in which the disaster occurred was a most unusual and extraordinary one—greater and more destructive than was ever known to happen before or since; that the water in the stream rose ten feet above its ordinary level. The accident took place in the night-time, and no one appears to have seen it, but the great probability seemed to be in the opinion of the witnesses examined, that it would have stood had it not been butted against by a wooden bridge carried down by the flood from higher up the creek.

For this accident, therefore, and all damages resulting from it, direct or consequential, the defendants ought not to be held liable. *Actus Dei nemini facit injuriam*.   The concurrence of negligence

[Livezey v. Philadelphia.]

with the act of Providence, where the mischief is done by flood or storm, is necessary to fix the defendants with liability. "When a loss," says C. J. Gibson, "happens exclusively from an act of Providence, it will not be pretended that it ought to be borne by him whose superstructure was made the immediate instrument of it:" Lehigh Bridge Co. v. Lehigh Coal and Navigation Co., 4 Rawle 24.

The bridge, in this instance, lodged in the bed of the creek, which is not a navigable stream, and has never been declared a public highway, and the place where it lodged was the plaintiff's own soil. The injury alleged to have been suffered was from the diversion of the water caused by this obstruction, and the contention on the part of the plaintiff now is, that it was the duty of the defendants after reasonable notice, which was proved to have been given, to have removed it, and that having failed to do so, they are responsible for the consequences. But the *ratio decidendi* in Forster v. Juniata Bridge Co., 4 Harris 393, which seems not only founded on sound principles but to be a logical deduction from the Lehigh Bridge Co. v. The Lehigh Coal and Navigation Co., 4 Rawle 24, does not support this contention. It was there said that in such a case where there is no negligence in the first instance the sufferer must get rid of the instrument and the injury as he may. "The company were not bound," said Gibson, C. J., "to follow the wreck of their bridge. They might abandon it without incurring responsibility for it, and the defendant, after notice given, might have disencumbered his land of it by casting it back into the river; but he could not appropriate it to his own use. He certainly might have removed it at his own expense, but the refusal of the company to remove it did not divest their property in it or bar their entry to reclaim it. It was held in Etter v. Edwards, 4 Watts 65, that a riparian owner has neither lien nor claim for preserving a raft cast on his land; and this on the authority of Doctor and Student, c. 51, in which it is said that a man who has abandoned his property may at any time resume the ownership of it." The facts that after notice from the plaintiffs, the city made an effort to remove the obstruction, or failing in this that they sold it to another, who made a second unsuccessful attempt, are circumstances which in no way vary the case. It is not essential to immunity that the defendants should have abandoned their property in the thing. The plaintiff always had his remedy in his own hands by removing it himself. Had he done so the defendants would have been entitled to it, though it may be that they could not have maintained replevin without a tender of the expense, or such expense might in trover have been recouped from the damages. Their act, or that of their vendee, though it may be admitted as the assertion of a claim to the property of the thing, could not create a liability for a wrong which

they had never committed, and for the consequences of which they could not have originally been made to answer. The principle of our decisions upon this subject seems to be fully supported by the voice of the civil law: Dig. c. 39, tit. 2, 5, 24, 1 Domat by Strahan § 1578; Pandectes par Pothier, vol. xvi., p. 5. The owner of the thing cannot indeed by that law recover or retake possession without compensating the damage it has caused, which may be an equitable rule. The defendants here have not retaken possession, nor are they now seeking to recover it. The defendants have lost their bridge, and the plaintiff his ornamental trees. Both are innocent parties, and both have suffered from the same act of Providence. It seems just that each should bear the loss which has thus fallen upon them.

Judgment affirmed.