Mr. Justice Cox
delivered the opinion of the court.
This was an action to recover damages for an injury sustained by the plaintiff on the cars of the defendant, under the following circumstances: The plaintiff was a postal clerk in the service of the United States Post-Office De *360 partment, and was, at the time of the occurrences hereafter mentioned, head clerk on one of the postal cars of the defendant railroad company. On Sunday, January 15, 1882, he started on a postal car of the defendant from the city of Washington to go to Danville, Virginia, which was the end of the route. The train left Charlottesville for Lynch-burg and Danville about 7.30 o’clock p. m. In about an hour and a half after leaving Charlottesville the train ran into a land slide, which threw the locomotive off the track. The scene of the accident was a cut, made by said railroad company, fifteen or twenty feet deep, and the earth had slipped from the right side entirely across the track. The plaintiff, by force of the collision, had several ribs broken, and was severely contused and suffered other consequential injuries.
This is all of the case that it is necessary to recite for the purpose of considering the questions of law involved.
The case went to the jury under several instructions and a charge from the court, and a verdict was rendered for the defendant. It comes before us upon a motion for a new trial upon bills of exception.
The first important question is, What was the immediate cause of the accident ? The slide was not from an embankment constructed by the defendant company, but from a> natural hill left by the defendant when it excavated for its-road bed. The earth was thrown upon the track by no immediate human agency, but by the forces of nature, occult, unforseen and unexplained even at this time except by conjecture. It was clearly, therefore, the act of God. The defendant may have been guilty of neglect in not providing' against such a casualty, either by a different construction of its road or by a better inspection, or otherwise. But if so, the most that can Be said is, that its neglect contributed remotely to the result. Still, it remains true that the directs immediate and proximate cause of the accident was an act] of God. The rulings of the court are to be read in reference-to this prominent and important fact in the case.
A.t the trial, the defendant asked the court to instruct- *361 the jury “ that the burden of proof is on the plaintiff* to show that the defendant was negligent, and that its negligence caused the injury.” The plaintiff’s counsel then asked the court to modify this instruction as follows: “But that the injury to the plaintiff upon the car of the defendant, if the plaintiff was in the exercise of ordinary care, is piima facie evidence of the company’s liability ” — which was refused.
This raises the important questions as to the presumption * of law growing out of an accident of this kind, and on whorh is the burden of proof.
The third instruction was that:
“ If the 'jury believe that the track and instruments of the ■defendant were in good order, its officers sufficient in number and competent, and that the accident did not result from any deficiency in these requirements, but from a slide of earth caused by recent rains, and that the agents and servants of the company had good reason to believe that there was no such obstruction on its track, and that they could not by the exercise of great care and diligence have discov- - ered it in time to avert the accident, then they should find for the defendant.”
This instruction, which was excepted to, presents- the question, What is the rule of diligence in guarding against accidents of the description mentioned?
It is expedient to consider the two questions together. Under some circumstances, it is undoubtedly true that the mere happening of an accident to a passenger on a railroad, where the passenger himself has been duly careful, raises a presumption that it was due to the negligence of the carrier. If the accident results from a defective arrangement of the time-table, as in case of a collision of trains, both occupying the same track at the same time and going in opposite directions, or from the breakage of an axle or wheel, or the failure of a brake to work properly,-or the displacement of a rail, or, in other words, from a defect in any •apparatus, construction or service, under the complete cnotrol of the defendant, then, according to the current of *362 authorities, the presumption of negligence on the part of the defendant does arise. But it is unsafe to go further than this. See Le Barron vs. East Boston Ferry Co., 11 Allen, 316.
There is another class of cases in which it is held by the highest authorities that the rule does not apply. If, for example, even upon a prima facie showing of neglect, by the plaintiff’s proof, the defendant shows that the accident was caused immediately by the act of God, the burden then is shifted to the plaintiff, of showing that the defendant’s negligence brought about or contributed to the operation oí the agency in question. And still further, if the plaintiff, by his own proof, shows that the accident was due to an act of God, the presumption of neglect on the part of the defendant does not arise, and the burden lies upon the plaintiff all the time of showing actual negligence on the part of the defendant.
In this connection, another rule is also recognized by the same authorities, and that is, that a different rule of diligence applies where the accident results from any defect in what is under the control of the carrier, from that which governs in cases where it is due to the forces of nature.
The carrier is bound to the highest degree of diligence and care in reference to his machinery, vehicles and plant. But the degree of care and diligence to be exercised in- pro-, viding against casualties from the vis major, or act of God, " is only ordinary, and not more than that which persons of' ordinary prudence are expected to exercise.
One of the first cases in which these questions arose is that of Morrison vs. Davis, 20 Pa., 171. In that case, it appeared that the plaintiff’s goods were on the canal boat of the defendant which was wrecked by reason of an extraordinary flood; that the boat would have passed the point where the accident occurred before the flood came, and would have arrived safely but that the defendant had a lame horse for towing the boat, and was, for this cause, unable to make the usual time. There the court held that the immediate cause of the injury was the act of God, and *363 the defendant’s neglect, in not providing proper force for towing the boat, contributed only remotely to the result. They say:
“Now there is nothing in the policy of the law relating to common carriers that calls for any different rule as to consequential damages to be applied to them. They are answerable for the ordinary and proximate consequences of their negligence, and not for those that are remote and extraordinary. And this liability includes all those consequences which may have arisen from the neglect to make provision for those dangers which ordinary skill and foresight is bound to anticipate. Though they are held to the strictest care as to the sufficiency of their ship and other vehi- j, cíes and the custody of the goods, yet no greater foresight of" extraordinary perils is expected of them than of other men, and no greater penalty is visited for its failure.’'1
This case therefore recognizes the rule of diligence and|í foresight in reference to extraordinary perils or acts of God,} as no stricter in the case of the common carrier than in the!' case of other persons.
This case is cited with approbation in Denny vs. N. Y. Cent. R. R. Co., 13 Gray, 481, and both cases are cited with approbation by the Supreme Court of the United States in the case of R. R. Co. vs. Reeves, 10 Wall., 176. That was a case in which tobacco, owned by the plaintiff and shipped on the cars of the defendant, was injured by a freshet. The ground of the claim against the defendant was delay in transporting the goods, without which they would not have been injured. The court says:
“We will only notice one of the rejected instructions, the fourth. It was prayed in these words: ‘ When the damage is shown to have resulted from the immediate act of God, such as a sudden and extraordinary flood, the carrier will be exempt from liability unless the plaintiff shall prove that the defendant was guilty of some negligence in not providing for the safety of the goods. That he could do so must he proven hy the plaintiff or must appear in the facts of the case.’ It is hard to see how the soundness of *364 this proposition can be made clearer than by its bare statement. A common carrier assumes all risks except those caused by the act of God and the public enemy. One of the instances always mentioned by the elementary writers, of loss by the act of God, is the case of Joss byjiood and stonn. Now, when it is shown that the damage resulted from this cause immediately, he is excused. What is to make him liable after this ? No question of his negligence arises unless it is made by the other party. It is not necessary for him to prove that the cause was such as releases him, and then to prove affirmatively that he did not contribute’to it. If, after he has excused himself by showing the presence of the overpowering cause, it is charged that his negligence contributed to the loss, the proof of this must come from those who assert or rely on it. * * *
The second instruction given by the court says that ‘If while the cars were so standing at Chattanooga they were submerged by a freshet which no human care, skill and prudence could have avoided, then the defendant would not be held liable. But if the cars were brought within the influence of the freshet by the act of defendant, and if the defendant or his agent had not so acted the loss would not have occurred, then it was not the act of God, and the defendant would be liable.’ The fifth instruction given also tells the jury that ‘ if the damage could have been prevented by any means within the power of the defendant or his agents, and such means were not resorted to, then the jury must find for the plaintiff.’ In contrast with the stringent ruling here stated, and as expressive of our view of the law on this point, we cite two decisions by courts of the first respectability in this country.”
The court then refers~EcTthe cases already mentioned of Morrison vs. Davis and Denny vs. N. Y. Cent. R. R. Co., and adds :
“ Of the soundness of this principle we are entirely convinced, and it is at variance with the general ground work of the court’s charge in this case.”
It is true that these cases relate to carriers of freight, *365 But no reasons are perceived why the same rules should not apply to the carriers of passengers ; and, in fact, the law as stated above is so applied in the case of Gillespie vs. St. Louis, Kansas City, etc., R. Co., 6 Mo. App., 554.
That was the case of a road bed washed out from under the ties by extraordinary flood, in consequence of which the road gave way and an injury resulted.
The court said: “ Here it came out, as a part of the plaintiff’s case, that the rainstorm was one of extraordinary violence and seemingly adequate to produce the injury. The defendant might have rested on the plaintiff’s evidence and have contended before the jury that the sole efficient cause of the injury was the sudden and extraordinary storm.”
After citing the evidence as to the storm they proceed:
“Here the plaintiff could not ignore this and similar evidence, and • thus assume that, like a plaintiff who proves merely such an accident as tends to show neglect in a carrier, she had cast the burden on the defendant. The burden lay on her to show that, notwithstanding the operation of the act of God in the case, the neglect of the defendant caused the injury or actively co-operated with the act of God to produce it. Even if it could be stated without qualification, which it cannot, that in an action against a carrier by a passenger, mere proof of the accident and injury shifts the burden, that rule would not apply to a case where the plaintiff’s own evidence shows the act of God as an operating and possibly sufficient cause. See R. R. Co. vs. Reeves, 10 Wall., 190; Livezy vs. Phila., 64 Pa., 106; Le Barron vs. East Boston Ferry Co., 11 Allen, 316.”
Again: “The second error in the instruction quoted runs through the third and fourth instructions given. By these instructions the difference between the responsibility of the carrier as against the act of God, and as against those perils which the carrier is answerable for, is ignored. The carrier is held by the instructions to the highest degree of foresight and care as against an act of God. But the law imposes on him no such liability. It has been truly said there is hardly any act of God, in a legal sense, which an exhaustive cir *366 cumspection might not anticipate, and supposable diligence not avert the consequence of. So that that doctrine would end in making the carrier responsible for acts of God, when by law the passenger and not the carrier assume the risk. It has been said that, to make the rule a working rule and give to the carrier the practical benefit of the exemption which the law allows him, he must be held, in preventing or averting the act of God, only to such foresight and care as an ordinarily prudent person or company in the same business would use under all the circumstances of the case. See also 43 Am. Dec., note, 364, citing above case and McClary vs. Sioux City & P. R. R. Co., 3 Neb., 44.”
By these cases the rule is clearly laid down that where the injury is in the first instance shown to have been occasioned by the act of God, no presumption of negligence on the part of the defendant arises, but the burden of proving such negligence is upon the plaintiff; and further, that the only measure of diligence required on the part of the defendant, to provide against such casualties, is the ordinary care and prudence that other people exercise. If the rule were as stringent as is claimed on the part of the plaintiff, that is, that the defendant must exercise extreme diligence to avert all accidents, there is no limit to the expense and trouble which it would have to assume. It would be necessary, for example, to send a pilot-engine in advance of every passenger train; to have every mile and fraction of a mile of the road policed and guarded by watchmen in sight of each other, so that no possible casualty could occur without the knowledge of the defendant’s agents in time to avert it —precautions which would exhaust the resources of any railroad company in the country.
This being the law, as we understand it, the plaintiff had no right to ask the court to instruct the jury to modify the first instruction given for the defendant by saying that the injury of itself was prima facie evidence of the defendant’s liability. Neither can he complain that, in the third instruction, the court did not assert the rule that the defendant should have exercised, extreme diligence, instead of great care and diligence in order to avert the accident.
*367 Another subject of complaint is found in the fourth instruction given at the instance of the defendant. The court says:
“ If the jury believe from the evidence that the defendant’s instruments, human and physical, were suitable and qualified for the business in which it was engaged; that the accident complained of was caused by the shaking down of earth which had been loosened by the recent'rains and that the earth was shaken down by the passing of this train, then the accident was not such an act of neglect for whicn the the defendant would be responsible, and the jury should find for the defendant.”
The former instructions contemplated the case of a slide occurring before the train reached the point of the accident. This one evidently looks to tho other theory — that the slide occurred simultaneously with the arrival of the train at the point in question. The complaint as to this instruction is that it excludes any inquiry into the negligence of the defendant; that it instructs the jury that if such an accident happened they must find for the defendant, without allowing them to consider whether the neglect of the defendant contributed to the result.
Taken by itself, this instruction might hear that interpretation. But taken in connection with the other instruction and the charge, we think such interpretation entirely unfair. All that the court means to say is that if vibration caused by the train resulted in the loosening and falling of the earth, that alone is not an act of negligence for which the defendant would be responsible, and that if that is all the negligence alleged or shown, the jury must find for the defendant.
In the previous instruction, which has just been referred to, and also still more fully in the charge, the question of the defendant’s negligence is fully brought out and presented to the jury. For example, in the charge, at page 8 of the defendant’s brief, the court adopts the language used by Shearman on Negligence, as follows:
“For if, by culpable negligence, he brought himself or *368 his property into circumstances of such difficulty or peril as to make it impossible for him to escapethem without injuring his neighbor, he cannot excuse himself by showing that he would have done more injury if he had left himself or his property where- it was. His original fault deprives him of the right to plead inevitable accident. And the occurence of inevitable accident does not excuse the omission of care to prevent the consequences of the accident from extending further than is inevitable. * * * Negligence is not always necessarily culpable. There are many cases in which it might be desirable that a greater degree of care should be used than the law requires; but it is only the lack of such care or diligence as the law demands, in the particular case, which constitutes culpable negligence. And the law makes no unreasonable demand. It does not require from any man superhuman wisdom or foresight. -Therefore no one is guilty of culpable negligence by reason of failing to take precautions which no other man would be likely to take under the circumstances. If one uses every precaution which the present state of science affords, and which a reasonable man would use under the circumstances, he is not responsible for omitting other precautionswhich are conceivable even though if he had used them the injury would certainly have been avoided. So, if he uses all the skill and diligence which can be obtained by reasonable means, he is not responsible for failure. * * *
“A railroad company is, however, only bound to provide against dangers which can reasonably be foreseen; and it is not guilty of culpable negligence in not securing the track against events which would not be anticipated by reasonable men of the ordinary sagacity required in the business; such, for example, as an unprecedented flood or frost. But dangers which might reasonably be expected to occur, though rarely, must be guarded against.”
The court said, in commenting on these extracts:
“I think it proper that I should explain to you the sense of the expression to which I have just called your attention, (That is that they are to exercise extraordinary vigilance.) *369 It does not mean that this railway company was to exercise more remarkable or more peculiar diligence than is usually used. Some common carriers are held to ordinary diligence. That is why I rejected certain prayers offered on the part of the defendant; because in those prayers I was asked to instruct you gentlemen that if those operating this train had exercised ordinary diligence, your verdict should be for the defendant. The court says: ‘Extraordinary diligence.’ And this is the rule which you are to take for your guidance in considering this case. * * *
“Now, if you find, as I have told you here, that while this train was going right through that tunnel, that cut, or I will say further, while it was within such a distance that the train could not have been stopped in time to avoid this landslide which came upon it, or if it had happened within such a short time before the train approached that curve that the railway company could not, by the use of a sufficient number of competent men in its employment (if you find such was the case), have given warning of it, the railway company is not answerable. * * *
“And right here comes in the question of fact for you to decide. On behalf of the plaintiff, Mr. Miller says the proof shows that that obstruction was there. But he first says that the road was not walked over sufficiently; that is not enough to have one lad walking at intervals up and down that road. Beauregard Stewart said that he left Rockfish at 6 o’clock, and at 7 P. M. he had walked to north of Faber’s. He was, therefore, a mile and a quarter from this place when the accident happened at 8.45. You are to find whether that was a sufficient inspection of the state of things along that road.”
It seems to us that taking the instructions and the charge together, the court has fairly stated the rules of law as to the presumptions of neglect and the measure of diligence, and we see no error requiring the granting of a new trial.