## R. R. GUMBERT ET AL. v. JOHN A. WOOD.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 27, 1891—Decided January 4, 1892.

1. The owner of a tow-boat has no right to destroy the coal boat of the plaintiffs, sunk in the channel, in the general interest of navigation; but in such case only, as shows clearly that the position of the sunken boat demands its destruction, to save a serious loss of money or property to the defendant.

2. That the defendant, in this case, would have suffered delay and expense by double-tripping in passing the plaintiffs' sunken boat in sections, was no justification for the destruction of the boat; and whether the defendant should have double-tripped, under all the circumstances, was a question for the jury.

Charge of Court below.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 91 October Term 1891, Sup. Ct.; court below, No. 745
December Term 1889, C. P. No. 1.

Returnable to the first Monday of December, 1890, Robert
R. Gumbert and others, partners as Gumbert & Huey, brought
trespass against John A. Wood. On February 2, 1890, the
record was amended by adding the name of Samuel Hazlett,
assignee, as beneficial plaintiff. Issue.

At the trial, on February 6, 1891, it was shown that, on
November 2, 1889, a number of coal boats, one of which loaded
with coal belonged to Gumbert & Huey, and another to the
defendant, were wrecked in the Ohio river, near a dyke oppo-
site Marietta; that the plaintiffs' boat could have been raised,
but there was a delay in doing so for lower water; that the
wreckage was lying quartering, and together made an obstruc-
tion, as was claimed, from eighty to one hundred feet wide, and
about four hundred feet long, narrowing the channel; that on
November 7th, the river rose higher, and on the night of that
day, John A. Wood, the defendant, having a coal fleet in charge
of his employees in the tow of his steamboat, S. L. Wood,
reached a point above, and believing that it was dangerous to
his fleet to attempt a passage, decided to tear out the wreckage.
On November 9th and 10th, the defendant, in pursuance of his
decision, tore all the wrecks to pieces by fastening the anchor
of his steamboat thereto and backing.

At the close of the testimony, the court, COLLIER, J., charged
the jury in part as follows:

The legal questions in this case have, as you heard me say
on the motion for nonsuit, been well settled, not only by our
Supreme Court, but by the courts of the United States. The
Ohio river is not only a public highway, but it is a national
highway; and the principles that govern questions of this kind
have been well settled by our Supreme Court, and by the vari-
ous United States courts. The plaintiffs are entitled to a ver-
dict at your hands on the admitted facts of the case, unless the
defendant, Mr. Wood, can show you a legal defence. He has
undertaken to do that, and it is for you to say whether the evi-
dence makes out his defence.

Charge of Court below.

The defendant admits that he tore out the boat belonging to Captain Gumbert, but says he did it because it was an obstruction to navigation; it lay in a part of the river which the coal men were accustomed to navigate with their coal boats, and if he undertook to go on he was in great danger of suffering loss to his fleet; that, having a right, as a citizen of the United states, to the use of the national highway, he had a right under the circumstances surrounding him to remove that wreck, not doing it wilfully or maliciously, and doing no more injury to it than he could help. If he had coal boats there, and if at the time he got there, under all the circumstances surrounding it, that wreck was an obstruction to the highway itself, in the path over which his boats would have to travel, and there was an exigency arising that he should remove it, then he had a right to tear it out, he had a right to clear the channel, doing no more injury than was necessary. . . . . These coal men were entitled to a pathway at that point, entitled to every bit of water between that place and the Ohio shore, without any obstructions at all.

The evidence is undisputed that in high water the current, owing to that dyke, was very great; that it was a place that would have to be navigated with great care, and was in the pathway of ordinary tows. The defendant came there on Sunday, some eight days after the boat had been sunk, and found the condition of things as described; there is not much dispute as to that. There is, however, some dispute as to whether one of the Brown boats was on top of Mr. Gumbert's boat; but I apprehend that is not a very important matter. When Captain Wood came there, he found four wrecked boats, Gumbert's boat, two of Brown's and the Wood boat, I think is the order: he found four wrecks in the pathway where he had a right, using proper care, to take his boats. When he found that condition of things, he at first tried to save one of the boats of the plaintiff at another point. He then came to the conclusion that it would be dangerous to try to go down there, and in that he is supported by the testimony; if he had, he alleges he might have suffered great damage.

You must of course, take the circumstances existing at the time he acted, the condition he was in, that he could not double-trip in safety as some of the witnesses say, and judge whether

or not under those circumstances it would be dangerous. He alleges that that being the case, he determined to sacrifice one of his own coal boats, and Mr. Brown agreed that his two boats should be sacrificed. He also says that Mr. Gumbert afterwards said that if it was necessary in his judgment he was satisfied; but that did not occur at the time he tore this boat out. He then went to work, tore them all out, and cleared the channel and went on down the river. Now, you will say whether there was a necessity for doing that. Captain Wood cannot act for all navigation, he must act in this necessity for himself; and you will understand the position he was in. Was there any exigency for him to act as I have read to you, under such circumstances? . . . .

The learned counsel for plaintiff claim there was no necessity, no exigency at all for this destruction. He says the defendant came there with a powerful boat, such as had gone through before; and could, with very little trouble and no loss, have double-tripped; that is, he could have found a landing above this point and taken his tow through safely in sections. You will say whether that is the case or not; and if you are satisfied that there was no necessity or exigency for this act of the defendant, then you should find for the plaintiffs. Unless the defendant satisfies you of his defence, your verdict should be for the plaintiffs; and if he has satisfied you that under the circumstances there was a necessity, or, in the language of the Supreme Court, an exigency, he could act as he did here. . . . .

In conclusion, I would say that if you find for the plaintiffs the measure of damages is the value of their coal and the boat.

The plaintiffs request the court to charge the jury:

2. That the defendant had no right to destroy the plaintiffs' coal boat, in the general interest of navigation, but only in such case as clearly shows that the position of the plaintiffs' property demanded its destruction, to save a serious loss of money or property to the defendant.

Answer: Affirmed.[1]

3. That the defendant would suffer some delay and some additional expense by double-tripping to pass the plaintiffs' coal boat, as shown by the evidence, was no justification for its destruction; and in destroying it in such case he must pay the actual loss suffered by plaintiffs.

Opinion of the Court.

Answer: Whether the defendant should have double-tripped, is for the jury, under all the circumstances, in determining the question of necessity and exigency.[2]

The defendant requests the court to charge:

1. That, under all the testimony, the verdict must be for the defendant.

Answer: Refused.[3]

—The jury returned a verdict for the plaintiffs for $500. Judgment having been entered, the defendant took this appeal, assigning for error:

1, 2. The answers to the plaintiffs' points.[1][2]

3. The answer to the defendant's point.[3]

*Mr. Edwin W. Smith* (with him *Mr. P. C. Knox*), for the appellant.

Counsel cited: Baker v. Lewis, 33 Pa. 301; Rex v. Watts, 2 Esp. 675; Shear. & Redf. on Neg., § 583; Flanagan v. Philadelphia, 42 Pa. 219; Winpenny v. Philadelphia, 65 Pa. 135; Philiber v. Matson, 14 Pa. 306; Beach v. Schoff, 28 Pa. 195; Cobb v. Bennett, 75 Pa. 326.

*Mr. Marcus A. Woodward*, for the appellee.

PER CURIAM:

We see no error in the answer of the learned judge below to the plaintiffs' second point. We think it needs no argument to show that the defendant had no right to destroy the coal boat of the plaintiffs, merely in the general interest of navigation. But if its location was such as to so obstruct navigation that the defendant could not pass it without seriously endangering the safety of his own property, he had the right to remove such obstruction. Nor do we find error in the answer to plaintiffs' third point. The learned judge properly left it for the jury to find whether the defendant should have double-tripped under all the circumstances. It was for them to determine the question of necessity. It would have been clear error for the learned judge to have affirmed the defendant's point, and withdrawn the case from the jury.

Judgment affirmed.