McKEESPORT SAWMILL CO. v. PENNSYLVANIA CO.

(Circuit Court, W. D. Pennsylvania. April 1, 1903.)

No. 18.

1. TROVER AND CONVERSION—DESTRUCTION OF PROPERTY.

It is not every destruction or deprivation of property that amounts to a conversion; an actual appropriation of it by the offending party for his own use being more or less involved therein.

2. SAME—DESTRUCTION OF DERELICT BARGE—BRIDGES.

A railroad company, in process of repairing a bridge across an unnavigable stream, is not chargeable with the conversion of a coal barge, which had slipped its moorings and floated down upon the false work without any one in charge, because it was found necessary to destroy the barge in order to dislodge it from where it lay bearing upon and endangering the bridge.

3. BRIDGES—DERELICT BARGE—CARE REQUIRED TO REMOVE FLOATING NUISANCE.

Where a coal barge, having slipped its moorings, floated down a stream at a time of high water without any person in charge, and became lodged against the false work of a railroad bridge, catching and holding back a large quantity of slush ice, endangering the safety of the bridge, while the railroad company could not wantonly or unnecessarily destroy the barge, they were authorized to take such steps as were reasonably necessary to free themselves from the danger. To charge that care should be taken to do the least possible injury was going farther than was warranted, as this was looking at it from the side of the other party; it being the interest of the party menaced that was to govern.

Rule for New Trial.

W. S. Dalzell, for the rule.

Alex. A. Patterson, opposed.

ARCHBALD, District Judge.[*]   This is an action of trover, but it is difficult to see how the defendants can be charged with having converted the coal barge of the plaintiffs simply because they found it necessary to destroy it in order to dislodge it from the position where it lay, bearing upon and endangering the false work of their bridge. It is true that the exercise of dominion over personal property in disparagement of the owner's right is, as a rule, a conversion, and its destruction would, therefore, seem to be eminently such, because it is the end of any further beneficial use or interest therein.   And yet it was held that the mere cutting down of trees without taking them away, which is a species of destruction, was not a conversion (Mires v. Solebay, 2 Modern, 245); nor the turning loose of a team of horses, whereby they were lost (Fouldes v. Willoughby, 8 Mees. & Wellsby, 540).   So, where the span of a bridge was carried away by flood, and lodged on the end of an island, it was said by Gibson, C. J., that the

[*] Specially assigned.

owner might, after notice, disincumber his land by casting back the structure into the river, without being liable, although by breaking it up and making use of the material he was.  Forster v. Juniata Bridge Company, 16 Pa. 393, 55 Am. Dec. 506.  All of which seems to show that it is not every destruction or deprivation of property that amounts to a conversion, and that an actual appropriation of it by the offending party for his own benefit is more or less involved in order to make it so.  But this question was not raised at the trial, and I will not undertake to definitely pass upon it.  What we are particularly concerned with is whether the jury were properly instructed as to the rights and duties of the defendants in the premises, and upon an examination of the charge I regret to say that I do not think they were.

The coal barge, for loss of which the action is brought, having slipped its moorings in some way not disclosed, and being without any one to guide it, was carried down against the fender and false work of the defendants' bridge, where it caught and held a great body of slush ice, becoming a peril, which it was not only the right, but the duty, of the defendant railroad to remove.  In doing so the company were not required to particularly concern themselves with the interests of the unknown owner, nor to see whether, in dislodging or breaking it up (which, as a last resort, they found necessary), either it or its contents could not, by some possibility, be saved.  On the contrary, had they seen the barge coming down the stream on the flood, and been able to anticipate its course, they would have been entitled to ward it off from their structure, and let it go where it would, having the right, as every one has, to protect themselves against any such menace of their property.  What they did after the barge lodged is to be judged of in the same way.  There is no suggestion that it was wantonly destroyed, and the evidence shows that it was cut to pieces only after other means had been tried and failed.  The only testimony that anything else could have been done with it is that of Capt. Hulings, who says that by breaking up the ice in shore with a steamboat, and then attaching a line, the barge could have been pulled over towards the Allegheny side, and so straightened out, and loosened from its position.  The jury seem to have been impressed with the idea that this course was practicable, and ought to have been pursued, and had the question been submitted to them with proper instructions, we might have been compelled to abide by the result.  But they were told that the defendant company were called upon to do as little injury as possible to the barge, and that, if they did not, they were liable.  This demanded of them a greater degree of care than the law imposes.  It involved in fact an effort to save the barge, which even the owners themselves did not see fit to exercise; for, although it lay lodged above the bridge for several days, and was discovered by Retzbach, who had charge of the plaintiffs' boats, to be in that position the day after it broke loose, yet nothing whatever was done to rescue it, or get it out of the way.  Having allowed the defendants to labor with it as best they could, they now seek to hold them liable for the full value of the boat and its contents.  But the railroad company, in trying to get rid of the menace to their bridge, were seeking to save themselves, and had the right to look first and principally to their own

concerns. The barge was a derelict, brought down upon them by the high water, and whether it got loose through the neglect of the owner to properly moor it or not is not material. It was astray, without a master, and thereby became a floating nuisance, which they were entitled to ward off or get out of the way as best they could. Had there been some one in responsible charge of it, it is possible the case might have been different. But, in any event, while they could not wantonly or unnecessarily destroy it, they were not required to save it for an unknown owner, or have particular regard to interests, which he himself took no pains to assert. To hold, therefore, that care should have been taken in the removal to do the least possible injury, was going farther than was warranted. The defendants were authorized to take such steps as were reasonably necessary to free themselves from the danger, which is quite different. The one is looking at it from the side of the one party, and the other of the other; and it is that of the party menaced that is to govern. This is the rule that should have been given to the jury, and we must assume that, if it had been, it might have produced a different result. It is the one, also, which is sustained by the authorities, as the following citations will show. Thus, in Philiber v. Matson, 14 Pa. 306, the plaintiff's raft, in attempting to pass over a dam, got lodged and stuck, and the defendant's raft, floating after and trying to avoid the other, was thrown to one side, and got fast on the rocks below. While in this position, a third raft came down, and jammed between the two, and there was danger of others doing the same. The defendant thereupon cut away so much of the plaintiff's raft as would enable him to get his own raft loose, and it was held that, to the extent that this was necessary, he was justified. So, in Beach v. Schoff, 28 Pa. 195, 70 Am. Dec. 122, the defendant, running lumber down a navigable stream, found a raft of spars belonging to the plaintiff lodged on a milldam. As they prevented his passage over the dam in safety, he removed two of the spars, and one of them was lost, for which the owner brought suit. The jury were instructed that the defendant had the right to remove, but in doing so, was bound to exercise the care which an ordinarily prudent man would have done in the removal of his own property; but this was held to be error. "Where one descending a [navigable] stream," says Knox, J., "finds it blocked up so as to arrest his progress, he may undoubtedly remove the obstruction; and that, too, in the most speedy manner, if the exigencies of the case require it. At the most, he is only liable for gross negligence or willful destruction. * * * Any other rule might result in loss to one without fault, for the purpose of protecting the person who, by accident or otherwise, had caused the obstruction." And again: "True, the defendant was not justified in doing unnecessary injury to the plaintiff's property, but he had the right to protect his own property at expense or loss to the plaintiff's." In Harrington v. Edwards, 17 Wis. 586, 86 Am. Dec. 768, the defendant, owning a wharf and vessel on navigable waters, finding a raft of lumber belonging to the plaintiff so fastened in the stream as to obstruct the approach of his own vessel to the wharf, untied the raft, without other damage to it, and, no one being in charge, it floated off, and was lost; for which he was held not

liable. In Mark v. Hudson River Bridge Company, 103 N. Y. 28, 8 N. E. 243, the plaintiff's boat was caught in a field of ice, and carried down against defendants' bridge, where it lodged; and in being removed by defendants' men was seriously injured. The jury were instructed that the defendants were not liable except "for the commission or omission of some act which an ordinarily prudent man would not have committed or omitted, and for reckless conduct on their part." It was recognized on appeal that the true measure of liability was such gross negligence as amounted to recklessness, but the one laid down by the trial court was accepted as the substantial equivalent of this, and so affirmed. Gumbert v. Wood, 146 Pa. 370, 23 Atl. 404, is not out of line with these decisions. A coal barge there belonging to the plaintiff was wrecked in the Ohio, and lay quartering the stream, obstructing and narrowing the channel. The plaintiff, proceeding down the river with his steamboat, which had a coal fleet in tow, believing it was dangerous to pass the wreck, tore it into pieces by fastening his anchor to it and backing. The plaintiff gave evidence to show that it was not necessary to destroy the wreck in this way, and that the defendant, with very little trouble and no loss, could have taken his tow safely by it in sections. The question was submitted to the jury, who found for the plaintiff. In affirming the judgment the Supreme Court say: "We think it needs no argument to show that the defendant had no right to destroy the coal boat of the plaintiff in the general interest of navigation. But, if its location was such as to so obstruct navigation that the defendant could not pass it without seriously endangering the safety of his own property, he had the right to remove such obstruction." Recognizing, however, that this was for the jury, and finding that it had been properly submitted to them, the verdict was not disturbed. All of these cases, therefore, lay down what seems to me the correct rule, which has already been announced above, and that is that the conduct of the defendant is to be judged in such a case by the exigencies of the situation, looking at it from the standpoint of his necessities. He does not have to try and save the plaintiff's property, but simply not to recklessly or unnecessarily injure or destroy it. Undoubtedly, this is a matter for the jury under proper instructions, but, not being satisfied with those that were given, the rule for a new trial is made absolute.