The complaint demurred to alleges, in brief, that during the hurricane of September 21, 1938, a tree located on the defendant's land was blown over so that it came to rest on top of a garage located on the plaintiff's land. The premises of the litigants have a common rear boundary. It is further alleged that the garage was in great danger of collapse due to the strain of the weight of the tree; that the plaintiff requested the defendant to remove the trunk of the tree, but the defendant refused and neglected to do so, causing expense to the plaintiff in removing it; and that additional expense will be incurred by the plaintiff to remove the stump of the tree from her land. We, therefore, have a situation where, at least from the allegations of the complaint, the whole tree is upon the plaintiff's land.
The defendant demurs on the ground that the tree and its stump were not placed on the plaintiff's land by any act or omission of the defendant, but by an act of God, a hurricane, for which the defendant is not liable.
The plaintiff's argument is that while the defendant is not liable for any damage done to the plaintiff's property brought about by the hurricane itself, the defendant is liable for any damage resulting from allowing the tree and stump to remain on the plaintiff's land in the position they were. In other words, that it was the duty of the defendant to remove the tree when not to do so would cause further damage to the plaintiff's property. The basis of this argument is that ownership of the tree imposes upon the defendant the duty of removal.
There is comparatively little law on the question, but what we have seems determinative of the problem even though we are compelled to reason somewhat by analogy.
Where one's property is cast or stranded upon the land of another as a result of an act of God, such as a flood or hurricane, the owner of the property may enter upon the land where it is and recover it without being guilty of trespass. 63 C.J. Trespass, p. 898. Also, the owner of the stranded property has the option to abandon it. But no rights are given the owner of the land in the stranded property until and unless the owner thereof has exercised his option to abandon it. "A boat, or a raft, or an ox, driven on" land of another "by the current, would continue to be the property of him who owned it at the time of the flood; and why not any other sort of property?. . . . *Page 500 
The common as well as the civil law allows the owner of the stranded property to enter and take it away." Forster vs.Juniata Bridge Co., 16 Pa. 393, 398.
This case concerned a bridge which was washed away by a flood and came to rest upon land of Forster, doing damage to it. The allowing of it to remain on Forster's land did further damage. Forster dismembered the bridge and converted it to his own use. The court said (at p. 399): "The company were not bound to follow the wreck of their bridge. They might abandon it without incurring responsibility for it, and the defendant, after notice given, might have disencumbered his land of it by casting it back into the river; but he could not appropriate it to his own use."
This case (at p. 398) quoted Justice Story to the effect that if timber were stranded on another's land, not by unavoidable casualty, but by the owner's negligent management of it, he would be answerable for damage done by it.
In Lehigh Bridge Co. vs. Lehigh Coal Navigation Co.,
4 Rawle (Pa.) 9, a bridge was damaged by water from a dam located above the bridge. The court said (at p. 24): "Where a loss happens exclusively from an act of Providence, it will not be pretended that it ought to be borne by him whose superstructure was made the immediate instrument of it. . . . It will be seen, therefore, that the concurrence of negligence with the act of Providence, where the mischief is done by flood or storm, is necessary to fix the defendant with liability."
In another case a bridge was washed away by a freshet, a "most unusual and extraordinary one — greater and more destructive than was ever known to happen before. . . .", and the Supreme Court of Pennsylvania reiterated its position to the same effect as in the Lehigh Bridge Company case. Livezey vs.Philadelphia, 64 Pa. 106.
In other words, to attach liability to the defendant in the instant case, there must be something more than mere ownership of the tree which has been cast upon the plaintiff's land. There must be some act or neglect upon the defendant's part, some fault on his part.
In a note in 55 American Decisions, at page 509, we find the law stated as follows: "Both the common law and the civil law hold that where the owner of property carried away by inevitable accident sees fit to abandon it, he cannot be held *Page 501 
liable for any injuries which it may have done to the property of others."
We have another case where logs floated down a river and lodged on the plaintiff's land without fault on the part of the defendant. They were allowed, by the owner of them, to remain on the plaintiff's land for several months. This was the case of Sheldon vs. Sherman, 42 N.Y. 484, where it was said (at p. 486): "There is a large class of cases, in which injury is suffered by a party, where the law gives no redress. If a tree growing upon the land of one is blown down upon the premises of another, and in its fall injures his shrubbery, or his house, or his person, he has no redress against him upon whose land the tree grew. If one builds a dam of such strength that it will give protection against all ordinary floods, the occurrence of an extraordinary flood by which it is carried away, and its remains are lodged upon the premises of the owner below, or by means whereof the dam below is carried away. . . . gives no claim against the builder of the dam. . . . In these cases the injury arises from a fortuitous occurrence beyond the control of man. It is termed `the act of God'. The party through whom it occurs is not responsible for it. the party suffering must submit to it, as a providential dispensation." The court continued further (at p. 487): "Neither were the defendants unconditionally liable for the injury arising from allowing the logs to remain where deposited. If they chose to abandon their property thus cast on shore, they had the right so to do, and no one could call them to account."
In the Forster vs. Juniata Bridge Co. case, supra, the lodgement of the bridge on Forster's land turned the course of the stream and with it a body of ice over the land, and its continuance in the location where it landed caused injury to Forster's peach orchard, stripped the soil, washed holes in the land, and carried off interior fences. In other words, there was the initial damage, and then the damage resulting from the allowing of the bridge to remain in the position in which it landed on Forster's land where it was an obstruction to his farming, and caused harm to him in several other respects. The owner of the bridge was held not liable for these damages.
In the instant case it is evident that the tree and stump are on the plaintiff's land. It is also alleged that the plaintiff repeatedly requested the defendant to remove them, but that he refused. The latter, therefore, exercised his option not to reclaim *Page 502 
the tree and stump, which was his right. Of course, if he sought to reclaim them, we would have a different situation.
"Before he can reclaim or recapture the property thus astray, justice and equity demand that he should make good the injury caused by its deposit and its continuance." Sheldon vs.Sherman, supra, 487.
In the plaintiff's repeated requests that the defendant remove the tree and stump, and the defendant's neglect and refusal to do so, there is evidence of the defendant's abandonment of his property which was all on the plaintiff's property. This is evident also from the allegations that the plaintiff has incurred expense in removing the trunk of the tree. In such a situation the defendant is not liable for the damage done initially, nor such as might result from its remaining on the plaintiff's land. If there was no duty to remove the tree from the plaintiff's land, the defendant cannot be chargeable with maintenance of a nuisance and any liability thereby.
 For the reasons stated, therefore, the demurrer is sustained.